P. MARSELIS & others v. THE MORRIS CANAL AND BANKING
COMPANY.

The rules of pleading in a court of equity, are not so technical and precise as in courts of law. The powers of the court, and modes of administering relief, authorize and require greater liberality. Still, when principles have by repeated adjudications become settled, it is quite as important that these principles should be preserved in this as any other court.

The court will not permit several plaintiffs to demand by one bill, several matters perfectly distinct and unconnected, against one defendant ; nor one plaintiff to demand several matters of distinct natures, against several defendants.

A bill filed by several complainants on behalf of themselves and all others, over whose lands the Morris Canal and Banking Company have made their canal, who shall come in and contribute ; charging that the defendants had entered on the complainants' lands without permission, or having purchased or agreed for the same, and excavated their canal and done the complainants great damage, and that the company is insolvent and unable to pay ; and praying that an account may be taken and damages awarded to the complainants for the injuries already sustained, and compensation for their lands taken by the company decreed to them, and that an injunction may issue restraining the company from using or occupying the land ; is multifarious, and on that account the injunction refused.

Where the demands of several complainants united in the same bill, are entirely distinct and independent ; where there is no privity between them ; no general right to be established as against the defendant ; no common interest in all the complainants, centering in the point in issue in the cause ; no general right claimed by the bill and covering the whole case ; no rights established in favour of complainants ; and no demand made, that the funds of the defendant shall be applied to the payment of the complainants' claims after their adjustment : and where their claims are not in *rem* but in *personam ;*—the bill cannot be sustained.

A bill by several to compel the specific performance of a contract for the sale of real estate, in which the complainants hold distinct rights, cannot be sustained.

PETER Marselis, Peter Zeliff, and others, to the number of thirty-eight, claiming to be landholders in the counties of Essex and Bergen, filed their bill against the Morris Canal and Banking Company, in behalf of themselves and all others over whose lands the said company had laid their canal, and who should come in and seek relief by and contribute to the expenses of the suit. The bill charges that the defendants entered on the lands

of the complainants without permission, and without having first purchased or agreed for the lands, and excavated their canal, doing to the said complainants great damage ; and that the said company is insolvent and unable to pay. The bill then prays that an account may be taken, and damages awarded to the complainants for the injuries they have already sustained, and that compensation for the lands thus occupied by the company may be decreed to them ; and also, that in the mean time an injunction may be issued restraining the company from using or occupying the said lands on which the canal is located, either for the purpose of a canal or for any other purpose.

*March* 16, 1830.—A motion was made for an injunction, according to the prayer of the bill. A number of questions were raised and discussed in the argument, on which no opinion was expressed by the court. Upon the point on which the case turned, it was insisted by the counsel,

*Ph. Dickerson* and *G. Wood*, in support of the motion— That all the complainants are landholders over whose lands the defendants had made their canal, who had all sustained injury by the operations of the company, and had not received the compensation to which they were entitled. That it was proper they should all join in this bill, and have their claims ascertained and settled in the same suit, to prevent multiplicity of suits. That this was allowed in many cases where there was a number of persons having distinct claims against the same person or property ; as in cases of creditors, cases concerning rights of fishery, concerning a modus, and others. That the case of the complainants in this bill was within the general principle. That the canal was one single common object, for the use of which the lands of all the complainants had been taken. It was one franchise, held by one person, a corporation : that was one side. On the other side was the complainants, landholders having distinct interests in this common object. That the company might file a bill of peace, against the complainants and all the landholders on the route of the canal : and the rule operated both ways. That the canal was an entirety through its whole extent. And when a dispute existed through the whole length of this entirety, all parties might come in. That

July, 1830.

Marselis et al.
v.
Morris Canal
& Banking
Co.

the complainants' having distinct rights of possession and title was of no consequence. All their claims could be adjusted in this suit. That it was better to have thirty-eight issues or assessments under one bill, than thirty-eight separate bills and proceedings under all of them, in some of which the interest might be so inconsiderable as not to justify the expense of separate suits. That the defendants claimed the right to take the lands (subject to compensation) under the franchise granted by their charter, which was one contract. The complainants also claimed under this contract : in it the rights of all parties were involved. The remedy sought by the bill was to enforce the execution of this contract, or obtain redress for its violation ; for which purpose the complainants were properly joined. In support of these principles they cited, *Brinkerhoof* v. *Brown*, 6 *John. R.* 139 ; *Durham* v. *Herbert*, 2 *Atk. R.* 484 ; *Coop. Eq. Pl.* 158 ; 11 *Vesey, jr.* 429; 1 *John. C. R.* 349, 447 ; 2 *Bridgm. Ind.* 572, s. 213, tit. *Tithes*, 7 ; 3 *Anst. R.* 841 ; 16 *Ves. jr.* 328.

*J. C. Hornblower* and *I. H. Williamson*, contra—Insisted that the bill in this case was multifarious: that there was a misjoinder of parties and causes of action. There were thirty-eight complainants, owning different tracts of land in different places, having distinct and separate interests, complaining of separate trespasses, and praying that the defendants might account to them separately and not jointly. That parties situated as they were could not unite in one bill. If thirty-eight landholders might unite, the whole 250, from the Delaware to the Passaic might, and each complainant's case might require a different answer : some might claim in fee, others in tail, and others have mortgage interests as the foundation of their rights ; while the injuries of which they complained were so many separate and distinct trespasses. That the matters complained of in this bill, could not be settled in one issue or trial ; there must be thirty-eight distinct *issues* or references. That the complainants had no joint or common interest in the matters in question; no joint evidence could be introduced, and no joint relief given. That the only interest common to all the complainants was, that they all had demands against the same defendant ; which was not sufficient. That the cases cited

5

on the other side were all of a different character. That the bill in this case was framed on the model of a bill filed by creditors, for themselves and others who might come in. The cases were not analagous. That judgment and execution creditors might join in filing a bill for themselves and others, to obtain satisfaction of their demands out of the same property or fund. To enable them to do this, they must have established their claims at law. And in this as in other cases, where one bill might be filed by several complainants, they must all have one right in one subject, and all must be bound by the decree; but in this case the landholders not joined would not be bound. That in the case of a will, the defendants might have distinct claims, but in the same subject. So in the case of rights of fishery. So where there was one general right and privity between the parties, as in the case of a parson and the parishioners. That there must be one general right covering the whole case; and where one general right might be settled in one suit, the parties might join to prevent multiplicity of suits. That the principal cases where parties might join, were suits by devisees, legatees, creditors, stockholders, members of voluntary associations, &c. That in such cases no decree could be made without affecting the rights of all. All having a common interest in the same fund, they were *quasi* parties; and where they were so numerous that all could not be brought before the court, a part might file a bill for the whole. That there was no case where parties might unite in this way, except where the claim of all was against the same fund, the proceedings in *rem*, and where all would be bound by the decree; which was not the case in this instance. That the general principle governing this case was, that several complainants could not demand several distinct and unconnected matters in one bill. That it was not sufficient that they all stood in the same relation to the defendants. That one bill by several purchasers of distinct parcels, for specific performance, could not be sustained, nor a bill by two complainants, against one defendant, for invasion of copy rights, in some of which they were jointly and in others separately interested, because in the latter the claims were distinct. That a bill would not lie against several tenants of a manor, to recover quit-rents, because the matters in difference could not be tried in any one issue.

They cited *Coop. Eq. Pl.* 182; *Beams. Pl. Eq.* 158; *Bunb. R.* 69; 2 *Anst.* 477; 2 *Dick. R.* 677; 1 *Mad. R.* 86; 2 *Ves. jr.* 323, 486; 1 *Bro. C. C.* 200; 2 *Scho. and Lef.* 370.

THE CHANCELLOR. The matter comes before the court on an application for an injunction. A number of objections have been urged against the bill in the shape in which it is presented before the court. And among others, it is objected, that this is not one of the cases in which the complainants may lawfully join in the prosecution of the suit. That their interests, instead of being joint or common, are separate, independent and distinct; and being blended together, the bill is multifarious and therefore bad. This is the first point I propose to consider. The question who are and who are not necessary or proper parties to a bill in equity, and what rights may be brought together in one suit, is one that sometimes occasions perplexity. While care must be taken on the one hand, to bring all proper parties before the court, the same care should be taken on the other, that none are brought there whose rights are not to be in some way bound by the decree that may be made. So too, while the court will, for the sake of avoiding a multiplicity of actions, take cognizance of suits in which many rights, having reference to one subject matter, are united; it must be careful not to admit several plaintiffs to demand by one bill, several matters perfectly distinct and unconnected.

The rules of pleading in a court of equity, are not so technical and precise as in the courts of law. The general powers of this court, and its peculiar modes of administering relief, authorize and require a greater degree of liberality than would be expedient in the courts of common law. Still, when principles have by repeated adjudications become settled, and especially when they are founded in justice and the fitness of things, it is quite as important that those principles should be preserved in this as in any other court.

To ascertain and apply the correct rule to this case, it is necessary to see precisely what the case is. The complainants complain of an injury which they have sustained by the acts of the defendant, in excavating their canal through the lands of complainants. They are several owners, having distinct rights in the several tracts of land through which the canal passes. The inju-

ries sustained by one of them have no necessary or natural connexion with those sustained by another. Admitting the jurisdiction of the court, each of these complainants might sue separately, either in a court of law or equity, without consulting with any other one, and without in the least degree affecting his rights. On the other hand, the suit is brought by all of them against one common defendant. They all complain of injuries similar in their character, and seek a similar relief; and therefore have a common object in view. It is admitted by the bill that all the landholders are not before the court, or have not joined in the suit. But the complainants allege that the suit is brought for the benefit of all who will come in and contribute. Such is the complainants' case. Let us examine some of the leading authorities for the principles that should govern it. In *Bouverie* v. *Prentice*, 1 *Bro. C. C.* 200, Lord Thurlow held, that when a number of persons claim one right, in one subject, one bill may be sustained, to put an end to suits and litigation. That was the case of a bill filed by the lady of a manor against several tenants for quit-rents due, and this method was adopted to prevent multiplicity of suits. But it was not considered as coming within the principle laid down by the court. The Lord Chancellor remarked, that no one issue could try the cause between any two of the parties ; and he could not conceive upon what principle two different tenants, of distinct estates, should be brought before him together to hear each other's rights discussed.

In *Ward* v. *The Duke of Northumberland*, 2 *Anst.* 469, the court says, that the cases where unconnected parties may join in a suit, are, where there is one common interest in them all, centering in the point in issue in the cause. In that case a bill was filed against two defendants jointly as executors, and against one of them as heir, for an account under an agreement entered into with the ancestor. It contained matters having no other connexion, than that one of the defendants was a party in them all. Separate demurrers were put in and allowed.

Ld. Redesdale, in *Whaley* v. *Dawson*, 2 *Scho. and Lef.* 367, held this principle; that where there was a general right claimed by the bill covering the whole case, the bill would be good, though the defendants had separate and distinct rights : but if the subjects of the suits were in themselves perfectly distinct, a demurrer

would be sustained. The same rule is recognized in *Saxton* v. *Davis*, 18 *Ves.* 72, and 1 *Vern.* 463, *Hester* v. *Weston*. In the *Mayor of York* v. *Pilkington*, 1 *Atk.* 282, the bill was filed to quiet the plaintiff in a right of fishery, against the defendants, who claimed several rights in the same fishery, and for a discovery and account of the fish they had taken. The bill was demurred to, and Ld. Hardwick at first allowed the demurrer, but after a re-hearing overruled it, and stated it to be no objection that the defendants had separate defences; that the plaintiff claimed a general right to the sole fishery, that extended to all the defendants; and that they might take advantage of their several exceptions or distinct rights. It was held necessary to support the bill, to prevent a multiplicity of suits. In *Coop. Eq. Pl.* 182, this rule is given: "The court will not permit several plaintiffs to demand by one bill, several matters perfectly distinct and unconnected, against one defendant; nor one plaintiff to demand several matters, of distinct natures, against several defendants." And to exemplify the rule, the following case is given, from 2 *Dick.* 677 : If an estate was sold in lots to different persons, the purchasers could not join in one bill against the vendor for a specific performance : for each party's case would be distinct, and would depend upon its own peculiar circumstances; and there must be a distinct bill upon each contract, or the bill might be demurred to. Nor could such vendor, on the other hand, file one bill for specific performance against all the purchasers. And Ld. Kenyon, in *Birkley* v. *Presgrave*, 1 *East. R.* 227, says, that he has known the attempt sometimes made, where an estate has been contracted to be sold in parcels to many different persons, to file a bill in the names of all of them to compel specific performance, which has been constantly refused. And he adds, that in general a court of equity will not take cognizance of distinct and separate claims, of different persons, in one suit, though standing in the same relative situation. In the case of *Brinkerhoof* v. *Brown*, 6 *John. C. R.* 139, Chancellor Kent reviews the leading authorities, and comes to this conclusion ; that a bill filed against several persons, must relate to matters of the same nature, and having a connexion with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct.

July, 1830.

Marselis et al.
v.
Morris Canal
& Banking
Co.

I lay out of view, as altogether inapplicable, all that class of cases which relates to creditors, legatees, &c. where a great many persons are sometimes interested, and the court will permit some to represent the whole, upon the well settled principle, that, though all the persons interested are not made parties, yet there is such a *privity* between them that a complete decree may be made.   And in *Coop. Eq. P.* 41, the cases of lords and tenants, in regard to questions of common ;  of parsons and parishioners, in relation to a modus, and others of a similar nature, are brought into the same class, on the ground of privity.  These last may with more propriety, perhaps, be classed under that branch of equity that relates to bills of peace.  These bills have no affinity with the one now before the court.  It is true the legitimate object of them was, to avoid multiplicity of suits; and the ancient and correct practice of the court was, not to interfere until the legal right had first been tried at law,  in an individual case ;  after which, the court would interpose to quiet that right, by injunction : *Jeremy on Eq. Ju.* 344. This is not a bill of peace : and I believe that it has not been contended that a landholder in the county of Morris or Warren, not coming in and making himself a party to this suit, would be in any wise affected by it.   I think the principle laid down in *Cooper* is the correct one ; that it is fairly deducible from the cases and must govern this, viz : that the court will not permit several plaintiffs to demand by one bill, several matters perfectly distinct and unconnected, against one defendant ; nor one plaintiff to demand several matters of distinct natures, against several defendants.  And according to this principle I feel constrained to say, that the bill cannot be sustained.   There is no kind of privity between these complainants ; there is no general right to be established as against this defendant, except the general right, that a wrong doer is liable to answer for his misdeeds to the injured party : which surely does not require to be established by such a proceeding as this.   The utmost that can be said, is, that the defendant stands in the same relative position to all these complainants.   There is no common interest in them all, centering in the point in issue in the cause ; which is the rule in 2 *Anst.* 469.   Nor is there any general right claimed by the bill, covering the whole case; which is the principle adopted by Lord Redesdale, *vide ante.*   Chancellor Kent's rule is quite as

broad as any authority will warrant; but it is not broad enough for the case now before the court. It requires that a bill against several persons must relate to matters of the same nature, and having a connexion with each other, and *in which all the defendants are more or less concerned, &c.* The case that was then before that learned judge, is the best exposition of his rule, and shows how utterly inapplicable it is to the present one. The plaintiffs were judgment creditors, having claims against an incorporated company, established by law, and not the subject of litigation. The general right claimed by the bill, was a due application of the capital of that company to the payment of their judgments; and that upon the ground of fraud charged in the creation, management and disposition of the capital, in which all the defendants were implicated, though in different degrees. In the case before the court there are no rights established; and what in my view is more important, there is no demand made, that the funds or capital of the company shall be applied to the payment of the complainants' claims after they shall have been adjusted. The claim is one not in *rem*, but in *personam* merely.

It was admitted by one of the complainants' counsel, that the company had a right to take the land under the charter, paying for it a fair compensation. And it was urged that this charter privilege was in the nature of a contract; that under this contract the defendants entered; and that the case presented is one of a contract for the sale of lands, with a part performance on one side. This view of the matter does not obviate the difficulty. The bill is obnoxious to the same objection, whether the demand made by it be considered as arising *ex contractu* or *ex delicto*. It is well settled that a bill by several to compel the specific performance of a contract for the sale of real estate, in which the complainants hold distinct rights, cannot be sustained. This conclusion renders it unnecessary, and perhaps improper, for me to look into any other parts of the case. On the ground that the bill is multifarious,

The injunction is refused.