The board of directors of the Asher Manufacturing Company, upon authority of its stockholders, resolved to issue $400,000 par value, ten-year, seven per cent., sinking fund, gold debenture notes and "that said issue of notes be secured by the pledge of
the entire assets of the company," excepting a $20,000 real estate mortgage. It was also resolved to appoint the Fidelity Union Trust Company trustee to countersign the notes and be the depository of the sinking fund for their redemption. Temporary notes were authorized, exchangeable *Page 403 
for definitive notes when prepared. The company and the trustee executed the debenture and the company issued and the trustee countersigned the temporary notes. $125,000 of them were used to pay off redeemable preferred stock and the balance was sold to the public. When the definitive notes were ready they were certified by the trustee and exchanged for the temporary notes which were returned to the trustee. The temporary notes, after the promise to pay upon the terms therein stated, stipulated that: "Said issue of notes is secured by the entire assets ofthe Asher Manufacturing Company," excepting the mortgage lien. Each note was endorsed by the trustee, "This is one of the notesdescribed in the within-mentioned indenture." The Asher Manufacturing Company failed to make the pledge or otherwise secure the notes and the clause in the temporary notes that they were secured was not incorporated in the definitive notes. The debenture deals elaborately with the note issue, the sinking fund and the countersigning by the trustees, but not a word as to security. The debenture and the notes, temporary and definitive, bear date April 1st, 1927. Within two years, March 26th, 1929, the company was declared insolvent and a receiver appointed, who sold the assets for approximately $65,000. The debts are about $1,000,000.
The bill charges the president and treasurer of the Asher Manufacturing Company with conspiracy to omit from the debenture the provision of the resolution of the board of directors to secure the notes, and the relief asked is a reformation of the debenture to harmonize with the resolution to secure the notes, and of the definitive notes to correspond with the security clause of the temporary notes, and as reformed, that the debenture be declared a lien on the assets and the fund in the hands of the receiver. As against the Fidelity Union Trust Company it is charged that the complainants purchased the temporary notes relying on the truth of the statement therein, that they were secured, and also on the trustee's certificate; that the certificate was false; that the trustee in disregard of its duty delivered the *Page 404 
definitive notes without any word of pledge; that it was the trustee's duty not to certify or exchange the definitive notes without first obtaining the security and that the exchange was knowingly made by it without notice to the noteholders, and the relief sought is that the trustee put the complainants in the position they would have been in had the certificate on the temporary notes been true and had the notes been secured by the company's assets; that it return the temporary notes, and that it pay damages for the fraud; and in the alternative, that the trustee account for the difference in value between the temporary and definitive notes.
It is apparent that the complainants have no lien on the assets; that a reformation of the debenture and the definitive notes would be futile and that the bill must be dismissed as to the receiver. The receiver represents the unsecured creditors of the company and as against them the claim of equitable lien on the assets of the estate cannot prevail. Graham Button Co. v.Spielmann, 50 N.J. Eq. 120; 50 N.J. Eq. 796.
As against the Fidelity Union Trust Company, there can be no recovery upon the theory of a breach of trust. As trustee, it is not accountable to the stockholders for the failure of the Asher Manufacturing Company to furnish the security. The promise of security was made by the company to the noteholders; they alone could sue to enforce the promise. The trustee had no participation in that nor in the default. The trust relation to the noteholders did not extend beyond, and the trustee's duty to them began and ended with the discharge of the obligations expressed in the debenture and that document confines the trustee's activities to the sinking fund, the notes and their certification. The law does not charge a trustee of an express trust with responsibilities not thereby imposed and assumed, and as the trustee did not undertake to obtain and certify secured notes, there is no liability on that score. Polhemus v.Holland Trust Co., 61 N.J. Eq. 654, and Conover v. GuaranteeTrust Co., 88 N.J. Eq. 450, are not to the contrary. There the trustees issued bonds in violation of the trusts. *Page 405 
The injury due to the false clause in the temporary notes, and the trustee's certificate endorsed on them is not the result of a breach of trust and relief is not cognizable in equity. The injury is collateral to the trust for which there is an adequate remedy at law. Perhaps not on contract based on the certificate, for the certificate may be construed as merely identifying the notes and their relation to the debenture and not as a guarantee or representation of their quality and thus within the principle of McCauley v. Ridgewood Trust Co., 81 N.J. Law 86, where, it appears, the bond contained the statement that it was secured by a recorded first mortgage on land, which was not true, and the trust company had certified that "this bond is one of a series of bonds mentioned in the deed of trust within referred to," c., and the court in finding for the defendant (on the pleadings) quoted Jones Corp. B. Mort. (3d ed.) § 287, that "the limited and guarded terms of a trustee's certificate cannot be lawfully held to embrace a representation or guaranty of the truthfulness of the description of the obligation as made by the obligor. Trustees act for a comparatively trifling consideration, limiting their liability to their own acts of negligence and misconduct, and it would be unfair to put so serious a burden as a guaranty upon them. So far as appears, there is not a single adjudication extending their liability to even an implied guaranty of the securities whose mere identity they have authenticated."
The certificate in that case was true; here the certificate was untrue only as to the description of the notes in the debenture and the untruth was not harmful, for if the debenture had contained an accurate description of the notes it would have added nothing to their quality.
Tschetinian v. City Trust Co., 186 N.Y. 432, is more nearly like the present case. There the bonds were entitled "First Mortgage Bonds," when they were not. The trustee certified that, "this bond is one of a series of bonds mentioned in the deed of trust within referred to." The suit was for false certification, and in denying relief the court said: "We are presented with the narrow question whether *Page 406 
the defendant, solely on account of the certificate which it placed upon the bonds, should be held to have guaranteed the nature and extent of the security therefor, because the mortgagor had placed upon them a statement purporting to be descriptive of the latter. This, of course, involves a consideration of the terms of the certificate which the defendant executed, for plaintiff's complaint is based upon nothing else. As already indicated we think that it would be unreasonable to impose upon defendant any such liability. The language employed when interpreted in its natural and ordinary meaning simply amounts to a statement identifying the bond whereon it is written as one of those mentioned in the mortgage, and the effect of this is an assurance to the purchaser that his bond is amongst those entitled to the benefits and protection afforded by such mortgage. But the statement does not upon any reasonable construction in the absence, as in this case, of any allegation of fraud or deceit, active or passive, make the trustee a guarantor of the quality and extent of the security given by the mortgage, or responsible for the accuracy of statements endorsed upon the bond by the mortgagor purporting to describe the nature of such security. This is as plain upon a mere reading of the certificate as it could be made by any extended argument or reasoning. There is involved the construction of very few and simple words, and we could not reach the views urged by plaintiff through any justifiable course."
A cause at law for deceit for the false clause in the temporary notes, and for the trustee's false certificate, would, however, stand on a different footing altogether, and upon the theory upon which this case was tried it would appear to be maintainable if the following facts were found and the conclusions be correct.
Responsibility for the presence of the false clause in the temporary notes rests with the counsel for the company and the trustee's assistant trust officer. They knew that the Asher Manufacturing Company had declared that the notes were to be secured, for when they prepared the debenture they had before them the resolution of the board from which *Page 407 
they arbitrarily struck out the words "the pledge of" so that it read: "Resolved that the said issue of notes be secured by the entire assets of the company," and as changed it was recorded in the minutes. They also knew that the notes were not secured and that it was not intended to secure them and in spite of this deliberately inserted in the temporary notes the clause that the series of notes was secured by the assets of the company. That the clause was not accidentally left in is manifest, for they deleted from the printer's proof of the temporary notes the words "the pledge of" so that it corresponded with the altered resolution. The deletion of the words "the pledge of," of course, did not alter the legal effect of the clause except to eliminate the specific manner of securing the notes. The strange conduct of the collaborators cannot reasonably be ascribed to obtuseness, for they are skilled lawyers and as their probity forbids the thought of fraud, it is considerately resolved as an indefinite type of gross negligence. True, the false representation in the notes that the "said issue of notes is secured by the entire assets of the Asher Manufacturing Company" is subscribed by the company only, but the trustee through its assistant trust officer was instrumental in incorporating the statement in the temporary notes, knowing, or it should have known, it to be untrue and it was culpable therein as well as certifying that "this is one of the notes described in the within-mentioned indenture," when it knew or should have known that the notes were not secured and that secured notes were not described in the debenture. Attributing the misrepresentation to gross negligence, it amounts to fraud in law.
Responsibility is not mitigated nor is the false representation qualified by another clause in the notes that they are "all issued and to be issued under and subject to the provisions of an indenture dated April 1st, 1927, between the company and the Fidelity Union Trust Company, as trustee, to which indenture reference is hereby made for a description of the rights of the holders of the notes and the terms and conditions on which said notes are issued, received and held with the same effect as if herein fully set forth and the *Page 408 
holder of this note assents thereto by the acceptance hereof." That relates solely to the mechanics of the debenture, not to the quality of the notes.
Nor can there be any serious insistence that the notes were in fact secured because all the assets stood as security for the company's debts. The assets were liable, but they were not security for the notes. The sense in which "secure" was used in the notes is, that the assets were to be responsible for the debts represented by the notes to the exclusion of all others, by some form of conventional lien. This was obviously the trustee's interpretation when it struck from the resolution and from the notes the words "the pledge of" thereby eliminating an exclusive method of securing the notes and allowing any other form.
The trustee cannot escape liability because of a provision in the debenture that it shall not be answerable except for its own willful misconduct or gross negligence, nor responsible for the default or misconduct of its agents or attorneys if they be selected with reasonable care, meaning, of course, default or misconduct short of gross negligence. The saving clause cannot by any stretch apply to the default or misconduct of duly selected agents or attorneys in failing to detect acts of gross negligence of the officials of the trustee, as for instance in the present case where the chief trust officer perfunctorily executed the debenture and countersigned the notes after a check-up by subordinates who failed to discover that they were irreconcilable and that the assistant trust officer who participated in their creation and had approved them was grossly negligent.
For the misconduct laid to the Fidelity Union Trust Company, extra its trust, the remedy is at law, in tort, for deceit. The law courts have exclusive jurisdiction in cases of deceitful misrepresentations. Krueger v. Armitage, 58 N.J. Eq. 357;Polhemus v. Holland Trust Co., supra; Mullen v. Eastern Trust Banking Co., 81 Atl. Rep. (Me.) 948, was for deceit for false certification.
The bill cannot be retained on the narrow ground that the complainants seek rescission of the definitive notes and a *Page 409 
return of the temporary notes because that is an equitable remedy and therefore equity will retain the cause for all purposes. Relief on the merits is denied. Ownership of the temporary notes is not essential to an action at law for deceit. They may furnish the evidence of fraud, but are not the cause for action.
Nor can the bill be retained as one to prevent a multiplicity of suits. There is no common interest nor common liability to the noteholders. Only those misled by the notes and the certificate or who acted on authoritative representation as to their tenor were injured. The complainant's rights of action are independent and several. Mr. Pomeroy, in his treatment of bills to prevent a multiplicity of suits at law, is of the opinion that jurisdiction over bills of the nature here presented may be exercised by a court of equity "although there is no common title nor community of right or of interest in the subject-matter among individuals" and solely on the ground that "there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded." In Marselis v. Morris Canal andBanking Co., 1 N.J. Eq. 31, on a bill by thirty-eight landowners to recover damages for the taking of their lands for canal purposes, Chancellor Vroom dismissed the bill because the invaded rights of the complainants were distinct and unconnected. That is the law and practice in this state. Mayer v. JourneymenStonecutters Association, 47 N.J. Eq. 519.
The bill will be dismissed. *Page 410