WILLIAM H. FOX *vs.* LUCIAN H. DAVIS & wife.

An indenture whereby a husband agrees to pay to a trustee money for the support of his wife, made in contemplation of an immediate separation, which takes place as contemplated, is not void as against public policy.

A divorce *nisi* under St. 1870, *c.* 404, does not put an end to the marriage relation.

BILL IN EQUITY, filed by a trustee, to obtain the direction of the court in the execution of his trust.

The case was heard before *Morton*, J., upon the bill and answers, and was reserved for the consideration of the full court.

The bill alleged that in April, 1870, and for a long time before, Lucian H. Davis of Taunton, and Mary A. Davis, his wife, had been living together very inharmoniously and in such a manner as to cause great discomfort to each other and great annoyance to the community; that April 8, for the purpose of effecting a peaceable separation, they and the plaintiff, as trustee for the wife, made the following agreement in writing:

" Taunton, April 8, 1870. In consideration that my wife Mary A. Davis and myself do not live harmoniously together, and it is thought better for us to live separately, I hereby agree to pay to William H. Fox the sum of one thousand dollars, the same to be put at interest and held in trust for her, the interest to be paid to her from time to time as it accrues, so long as she lives apart from me and makes no charge upon me for support. And I fur· ther agree that if we are ever lawfully divorced, then the whole sum of one thousand dollars so held in trust shall be paid directly to her. And it is further agreed between us that if she ever makes any charge upon me for support or comes back to live with me, then this trust shall terminate and said sum shall be repaid to me. And I, William H. Fox, in consideration hereof agree to accept said trust and to hold said money and apply it according to the above agreement.          Lucian H. Davis,
                                        " Mary A. Davis,
                                        " Wm. H. Fox."

The bill then alleged that Lucian H. Davis, in accordance with the agreement, gave to the plaintiff $1000, which was put at interest, and the interest paid from time to time to the wife; that

the wife had since then lived separate and apart from her husband, and had made no charge upon him for her support; that at November term of this court, 1870, the husband brought a libel for divorce against the wife on the ground of her gross and confirmed habits of intoxication contracted after marriage, upon which libel a divorce *nisi* was decreed at that term ; that the divorce was obtained without collusion on the part of the wife, and against her wishes and efforts; that the husband was demanding of the plaintiff the $1000, on the ground that the agreement was void; that the wife was also demanding that the fund should be paid to her, on the ground that a lawful divorce had been decreed between her husband and herself, or that she should continue to receive the income, at least, of the fund, and that, if the divorce should be made absolute, she should then receive the fund itself.

The answer of the husband admitted that he made the agreement ; that he had paid the trustee $1000, the interest of which he believed had been paid to his wife, and that a divorce *nisi* had been decreed between himself and his wife, upon his petition, and alleged that he was a mechanic ; that at the time the agreement was made he was working daily at his trade, and was of necessity absent from his home all day every week day, except one hour at noon ; that he had a family of young children, and was obliged to procure, and did procure, the services of a competent person to take charge of his household and of his children ; that between the time of the making of the agreement and the time of filing his libel for divorce, his wife was in the habit of coming to his house in his absence, in a state of intoxication, and of using towards his housekeeper, in the presence of his children, the most profane and obscene language ; that on one or two occasions she drove the housekeeper out of doors, by threats of personal violence, claiming herself to be the lawful mistress of the house; that by reason of such misconduct of his wife, he felt obliged, for his own peace, as well as for the safety and welfare of his family, to ask the intervention and protection of the law ; that since the decree of divorce, his wife had been a resident of the State of Rhode Island ; that there was pending in the Supreme Court of that state a libel for divorce, brought by her, in which she asked

a decree of divorce on the ground that he had failed to furnish her suitable maintenance and support; that he was informed and believed that the stipulation in the agreement which contemplated a future legal divorce of himself and wife, and, in that event, the payment of the whole of the money to her, was against public policy and would not be sustained by the court; and that he was informed and believed that the agreement was also invalid, because no provision was made by it for the disposition of the trust fund, in the event of the death of either party. The answer prayed that the principal and interest of the trust fund should be decreed to him.

The answer of the wife admitted all the averments of the bill, and alleged that she made the agreement after having been treated by her husband with extreme cruelty for many years, and after having been expelled from his house with great violence many times, and often in the night-time without sufficient clothing and entirely without money or other provision, and after having been beaten and bruised by him to the great peril of her life, that since the making of the agreement she had lived separate and apart from her husband, and had been of no charge or expense to him for her support or otherwise; that at all times she had kept and obeyed the provisions of the agreement that, by its terms, were to be kept by her; that shortly after obtaining his divorce, her husband demanded the payment of the principal and interest of the fund to himself, and forbade the trustee to pay the same to her, and that thereafter the trustee ceased to pay the interest to her, whereby she had been left wholly without provision for her support. And she prayed that the trustee might be directed to pay her the whole of the fund with the accrued interest; or, if not, that he might be directed to pay her the income.

*S. R. Townsend,* for the husband.

*W. E. Fuller,* for the wife.

ENDICOTT, J.  It is contended by the husband that the agreement of separation and the trust created thereby cannot be upheld, because against public policy. The great weight of authority sustains the validity of such contracts, where the separation

has taken place, or is to take place immediately. But where the agreement is made in contemplation of future separation, the current of authority is against its validity. In this case the bill recites that the parties have lived separately since the agreement.

So far as this court has passed upon the question, it has recognized the validity of such a contract for the support of a wife during separation. In *Page* v. *Trufant*, 2 Mass. 159, it was held that a bond by a husband for the support of his wife after a voluntary separation was a valid contract, and that the consideration was legal and meritorious. In *Hollenbeck* v. *Pixley*, 3 Gray, 521, a husband and wife entered into articles of separation, and all the separate property of the wife was conveyed to a trustee for her benefit, and it was held that she was not entitled after his decease to an allowance out of his personal estate. In *Albee* v. *Wyman*, 10 Gray, 222, the question was raised. The learned judge who delivered the opinion states the law, as held in England and in numerous decisions in this country, to be well settled in favor of the validity of such contracts, but considers the rule to be obnoxious to grave objections. It was unnecessary to consider the question at large in that case, because, assuming the validity of the contract, it was held to have been discharged. Similar suggestions, in regard to the policy of allowing such contracts, were made in *Walker* v. *Walker*, 9 Wall. 743; but the court sustained their validity, citing the numerous authorities in England and this country. *Hunt* v. *Hunt*, 4 De G., F & J. 221. In *Holbrook* v. *Comstock*, 16 Gray, 109, the decision is based on the assumed validity of such a contract.

We are of opinion, therefore, that when, in contemplation of an immediate separation, actually carried out, a husband, by indenture, places money in the hands of a trustee, the income of which is to be paid to the wife during life, the indenture is binding on him, and will not be set aside as against public policy.

It is not necessary to determine the construction and legal effect to be given to the provision of the indenture that the principal sum shall be paid to the wife, if the parties are legally divorced. A divorce *nisi* under St. 1870, *c.* 404, does not sever

the bonds of matrimony, and she is still a married woman. *Edgerly* v. *Edgerly*, 112 Mass. 53.

The trustee is therefore to hold the fund, and pay over the income thereof to the wife as provided in the indenture.

*Decree accordingly.*