Demarest *v.* Terhune.

Samuel R. Demarest, Jr., and Cornelius W. Berdan, executors of Jacob Terhune, deceased,

*v.*

Mary E. Terhune.

[Filed November 25th, 1901.]

1. A general demurrer for want of equity need not further specify the grounds thereof.—*Held,* that a demurrer for want of equity was sufficient to raise the question whether the transaction in question in this case showed a contract between the husband and wife enforceable in equity, or gave rise to a claim for equitable relief, as such a demurrer raises objections reasonably apparent from the face of the bill and the demurrer.

2. The act of the husband in joining with the wife in the conveyance of her land was a sufficient consideration to support the note given by her, even though *Gen. Stat. p. 2019 § 32,* giving married women living separate from their husbands full power to dispose of their property, applies to her, as this act in joining therein rendered the property more salable.

3. The bill states sufficient facts to show an equitable claim in favor of the husband against the separate estate of his wife, though the note is void at law, and the bill does not allege facts to show that the husband did not overcharge the wife for his consent to the conveyance.

On demurrer to bill.

*Mr. Milton Demarest,* for the complainants.

*Mr. James M. Van Valen* and *Mr. Michael Dunn,* for the defendant.

Stevenson, V. C.

The bill sets forth the following case :

The defendant, Mary E. Terhune, is the widow of the complainants' testator, Jacob Terhune, deceased.  The equitable rights for the enforcement of which this suit is brought arose from a business transaction, in the lifetime of the husband, directly be-

Demarest v. Terhune.

tween the husband and the wife. The parties resided for many years prior to the year 1899 at East Hackensack, in Bergen county, in this state. The bill states that

"by reason of some difficulty in the marital relations of the said Jacob Terhune and Mary E. Terhune, they had for many years and up to the time of the decease of said Jacob Terhune lived continuously in a state of separation, residing in the same house, but did not cohabit together as man and wife."

Each owned considerable property, both real and personal. Because of the relations existing between these parties, some time prior to 1891, they entered into an agreement with each other to the effect that in the event of either of them selling any real estate, such selling party should pay to the other for the necessary release of dower or curtesy, as the case might be, "whatever sum should be agreed upon between them."

After this agreement had been made Mrs. Terhune sold a part of her real estate, and, before completing the sale, agreed to pay her husband $1,000 as the consideration of his joining in the deed and releasing his estate by the curtesy in the land conveyed. In discharge of this obligation the wife gave the husband a promissory note, as follows:

"EAST HACKENSACK, Sept. 10, 1891.

"One year after date I promise to pay Jacob Terhune, or his order, one thousand dollars with interest from date.

"$1000.

"MARY E. TERHUNE."

After receipt of this promissory note the husband joined in the execution of the deed.

The defendant paid the interest on her note to her husband annually up to September 10th, 1898. In the month of December, 1898, the defendant "left the home of her husband and moved to the village of Hackensack." When making the last payment of interest on the note the defendant wrote to her husband the following letter:

"HACKENSACK, April 4, 1899.

"Jacob Terhune:

"Enclosed find check for interest for one year due Sept. 10, 1898. Kindly mail me a receipt.

"Respectfully,

"MARY E. TERHUNE."

Some time after Mrs. Terhune had made the above-mentioned conveyance and note, but exactly when the bill does not allege, Mr. Terhune desired to sell a portion of his real estate, and thereupon, in accordance with the arrangement between them, the couple agreed that the wife should receive $1,000 for her release of dower. After this sum had been fixed Mr. Terhune proposed to his wife that, instead of paying her in cash, he should surrender to her the note for $1,000 which he held against her. Mrs. Terhune refused to accede to this proposition, and insisted upon receiving cash. Accordingly, not having the cash until he should receive it as the result of the transaction, Mr. Terhune executed to his wife his promissory note for $1,000, payable one day after date; and on the day following he paid the note in cash, and the same was thereupon surrendered and destroyed. Jacob Terhune died October 20th, 1899, and the complainants, his executors, have demanded payment of the note from the defendant. The defendant refuses to pay, taking the position that "she is not legally liable and cannot be held for such payment, because there was no consideration for the note between her and her said husband."

The bill prays for a decree compelling the defendant to pay the complainants either the amount of her note or the $1,000 which she received from her husband, and also prays for further and other relief, &c.

The only specification in the demurrer is the common form for want of equity, viz.:

"that the complainants have not in and by their said bill made or stated such case as entitles them in a court of equity to any relief against the defendant as to the matters in said bill or any of such matters."

Prior to the argument of the demurrer the complainants moved to strike it out, on the ground that it failed to comply with rule 209 of this court, which requires every demurrer to "distinctly specify the ground or grounds of demurrer."

This preliminary objection is not well taken. It is well settled that a demurrer in the old form which specifies as its basis only want of equity is not in conflict with the above-mentioned rule. In other words, the statement in a demurrer that the bill does

not set forth any case for equitable relief is a "specification" of a ground of demurrer within the meaning of the rule, but the question remains, what attack upon the bill will be permitted under such a specification? *Essex Paper Co.* v. *Greacen, 18 Stew. Eq. 504; Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 385; Bishop* v. *Waldron, 13 Dick. Ch. Rep. 583.*

The object of the rule is to give reasonable notice to the complainant of the grounds upon which the sufficiency of his bill is to be called in question, to the end that he may prepare to meet the attack which is made and that he may not waste his time in preparing to meet attacks which are not made. It follows that under the old form of demurrer for "want of equity" the demurrant may raise all objections to the complainant's case on the merits as presents in the bill of complaint, which are reasonably apparent upon a perusal of the bill and demurrer. No exact and rigid rule from the nature of the case can be laid down on this subject. It was not the intention of the rule to compel the demurrant to submit to his adversary his brief or any particulars of his argument. The purpose was to notify the complainant only of the general subject-matter of the argument. If the bill and demurrer for want of equity do not give reasonable notice of any defect in or debatable question concerning the complainant's case as exhibited in his bill, then the demurrer is frivolous but cannot be stricken out for non-compliance with rule 209. It is like a demurrer for laches when no foundation for the charge of laches is contained in any allegation of the bill of complaint.

In this case the complainants were plainly notified by the demurrer that the question to be argued was whether the bill set forth a transaction between a husband and wife which was enforceable in equity as a contract or gave rise to any just claim on the part of the husband for equitable relief.

Turning now to the question whether the facts set forth in the bill give rise to an equitable cause of action upon the part of the husband against the wife, it is to be admitted at the outset that the defendant's promissory note to her husband is void at law. This is not a case merely of incapacity of the husband and wife to sue each other in courts of law, but of their

incapacity to make a contract which courts of law will recognize
as valid. These complainants, the executors of the husband, are
no more able to maintain an action at law on this contract
against the defendant than was her husband in his lifetime.
*National Bank of Rahway* v. *Brewster, 20 Vr. 231.*

Some contracts between husband and wife, however, are en-
forceable in a court of equity, and the question in this case is
whether the bill of complaint exhibits a contract within that
limited class. It is more strictly correct to say that the question
is whether the bill of complaint exhibits a transaction including
a contract between husband and wife out of which arose an
equitable claim of the husband against the separate estate of the
wife. Contracts of married women,

"as recognized by equity are only contracts *sub modo;* the indebtedness
which they create is not a legal indebtedness, but only an equitable
liability enforceable in a peculiar manner by courts of equity." *3 Pom.
Eq. Jur. § 1121.*

The married woman's contract, while her common law dis-
abilities remained, was, in fact, regarded in equity as creating
not a personal liability, but a liability of her separate estate.
The decree was against this separate estate and never was against
her personally. *3 Pom. Eq. Jur. § 1123; 15 Am. & Eng. Encycl.
L. (2d ed.) 791 note 6.*

While under the statutes of this state the common law dis-
ability of a married woman to contract generally has been
largely removed, her contract with her husband remains to-day
unaffected by this legislation. It is, at best, but a contract
*sub modo* enforceable only in equity under equitable principles
against her separate property. *Woodruff* v. *Clark, 13 Vr. 198;
Healey* v. *Healey, 3 Dick. Ch. Rep. 239; Wood* v. *Chetwood, 17
Stew. Eq. 64; affirmed, 18 Stew. Eq. 369.*

Counsel for the defendant argue that the bill of complaint
does not show that there was any consideration for the wife's
promise to pay her husband $1,000. It is urged that when the
note was made in 1891 the defendant had full power to convey
her real estate under the provisions of the act of 1880, entitled
"An act for the better securing of the property of married women

living in a state of separation from their husbands" (*Gen. Stat. p. 2019 § 32*); that the husband's joining in the wife's deed was therefore unnecessary; that the true construction of the above-cited act leads to the conclusion that the wife's conveyance of real estate made within its provisions passes her title free even from the estate by the curtesy which the husband otherwise might have in case he survived her.

It is not claimed on behalf of the complainants that the real estate or interest therein which the wife undertook to sell was not of the kind or nature to which the act of 1880, or its amendment of 1888 (*Gen. Stat. p. 2019 § 33*), expressly applies; the whole argument on both sides has proceeded upon the assumption that if the wife was within the operation of these statutes or either of them then the land was also. I shall therefore not pause to examine either the statutes or the allegations of the bill in regard to this matter.

Whether this statute merely enables the wife under certain circumstances to make a conveyance of her land which otherwise she could not do without the co-operation of her husband, or whether such conveyance extinguishes all possible interest of the husband in the land, or whether this statute passed in 1880 could affect the rights of Mr. Terhune in the real estate of his wife, or whether there was a probability or possibility that in case Mr. Terhune survived his wife he would have an estate by the curtesy in lands of which she died seized, are all questions which relate to the sufficiency of the consideration, the amount of advantage of Mrs. Terhune's separate estate arising from her husband's joining in her deed as compared with $1,000 which she promised to pay. If all these questions are answered in favor of the defendant, it still remains that under the circumstances set forth in this bill it was plainly necessary that Mr. Terhune should join in any conveyance of real estate which his wife might wish to make in order to make a title which any prudent person would be willing to take except at a price quite disadvantageous to her.

It is by no means clear that the defendant, at the time she made the conveyance in question, was within the operation of the act of 1880. It is true that the bill alleges that the defend-

Demarest *v.* Terhune.

ant was then living "in a state of separation from her husband,"
thus employing the very phraseology of the statute; but this
statement is qualified by subsequent allegations showing that she
was residing in the same house with her husband, and that her
husband, presumably, was providing otherwise for her support.
The main purpose of the act of 1880 must have been to enable
married women separated from their husbands to sell their real
estate, in order to procure the means of support which their
husbands were not supplying. The defendant's situation, at the
time she made the conveyance and note in question, does not seem
to be within the spirit or the letter of this statute. If, however,
this conclusion is incorrect, the defendant still, practically, was
unable to make an advantageous sale of her real estate without
having her husband join in the deed, because "the state of separa-
tion" necessary to make the statute applicable was not perceptible
to any ordinary observer—to the class of persons who would be
possible purchasers. When a man and wife are living together
in the same house—the house of the husband—the common judg-
ment would be that they are not "living in a state of separation"
within the meaning of the act of 1880.

If the state of separation from her husband in which a wife
were living should be plain and notorious, the husband living in
one county and the wife in another, still the signature of the
husband to the wife's deed would add value thereto, apart from
any question in regard to his possible estate by the curtesy, be-
cause any title taken from a married woman, under the provi-
sions of the act of 1880, would always have to be defended by
proof of facts which might be difficult to prove. In the present
case the defendant's situation, at the time she made the convey-
ance in question, if, in fact, within the statute of 1880, would in
all probability, after a very short time, be extremely difficult to
bring within that act by evidence which could be obtained and
produced in any court.

Whatever may be the construction of this statute, it is plain
that Mr. Terhune's signature added great value to his wife's deed,
and in all probability was necessary, in order to enable her to
effect a sale which would not be a sacrifice. I think, therefore,
that it is plain that there was a substantial and valuable con-

sideration for Mrs. Terhune's note, in the shape of an advantage to her separate estate. Mr. Terhune certainly had a *bona fide* claim to control the disposition of his wife's real estate, even if his actual rights in respect to that real estate were uncertain. His claim gave him, in fact, a very large control over the sale of his wife's property, as we have seen. He waived all his rights, whatever they might be, and, by joining in his wife's deed, placed her in the same position, with reference to the sale of the property, as if all his contentions in respect thereto had been settled adversely to his interests by the court of last resort in this state after an expensive litigation.

The argument that the defendant's contract with her husband was without consideration, in my judgment, has no foundation.

But admitting a consideration for this contract, it is insisted that all contracts which a wife enters into directly with her husband are presumably void when set up in a court of equity against her; that the burden is upon the party setting up such a contract to allege and prove the special facts and circumstances which make it enforceable in equity.

In *Ireland* v. *Ireland, 16 Stew. Eq. 315,* Chancellor McGill made this deliverance: "When a husband comes into court and asks for the enforcement of a contract which he has made directly with his wife, or when those who stand in his place so come, the burden is upon him or them to show the fairness of the contract and the equities which call for its enforcement. The wife is presumed to be *sub potestate viri* and the affirmative is with the husband, and those who represent him, to show that the contract was fair, open, reasonable and well understood."

The above-quoted language, if taken without reference to the facts of the case in which it was employed and applied literally to the present case, might, with great force, be claimed to sustain the contention of the demurrant. It must be conceded that there is nothing to show that the amount which the wife agreed, by her promissory note, to pay to her husband as the price of his joining in her deed may not have been the greater part of the price which was paid to her by the purchase; in other words, there is nothing alleged in the bill directly to show that the wife's contract was fair and unaffected by extortion. There are circum-

stances alleged in the bill which, perhaps, make such a supposition highly improbable. But if unfairness in the amount which the husband has attempted to exact from his wife for the advantage which he has conferred upon her separate estate makes her promise to pay that amount absolutely void, and leaves him (the husband) without equitable relief in the premises, it would seem that the true rule would require that this bill, in order to present an equitable cause of action, should show how much of the price of the land which the wife sold she was obliged to agree to surrender to her husband by the contract in question.

I think, however, that Chancellor McGill's statement of doctrine was intended by him to be confined to the class of contracts between husband and wife which are illustrated in the case which was before him. In that case (*Ireland* v. *Ireland*) the wife filed her bill, after the decease of her husband, to have her dower assigned in the lands of which he died seized. The devisees of the husband, the defendants, undertook to interpose a plea which set up a contract between the husband and wife providing for their separation. The very nature of the contract exposed it to the disfavor of the court, as the chancellor intimates. But, by this contract, the wife, according to one construction, was made to bar her right of dower in her husband's lands for a consideration which was manifestly inadequate, which, in fact, the chancellor declared he failed to perceive at all. In view of this aspect of the case the learned chancellor used the language above quoted. The contract of the wife was sought to be enforced against her absolutely and to the letter. She had either barred her right of dower by her contract or she had not. The whole case depended upon the question whether her contract with her husband was enforceable in equity strictly according to its terms. When a contract of a wife with a husband is set up against her in a court of equity in such a manner and with such effect, the pleading which exhibits it to the court should manifestly show a contract presumptively enforceable according to its terms, and therefore should conform with the principle which the chancellor indicates.

But where the husband sues the wife in equity on her promissory note given for money borrowed, or goods sold and delivered

by the husband to her, or for other contributions made by him to her separate estate at her request, the equitable action does not necessarily involve the enforcement of the contract according to its terms. It is a contract *sub modo* which is brought into court—a contract which may be largely or wholly enforced, absolutely or upon terms as the court may deem equitable. In fact, this class of actions in equity, brought by the husband against the wife, although they may present contracts of the most solemn nature, which, at law, would absolutely control the rights of the parties, are, in their essential nature, demands for compensation upon an equitable *quantum meruit.* It would seem that even though a court of equity might differ in its judgment as to the fairness of the amount which the wife has promised to pay the husband from the judgment of the husband at the time the contract was made, that would not constitute a reason for turning the husband altogether out of court and refusing him that measure of compensation which the court might deem fair.

During the period when, in this state, a married woman was generally incapacitated, under our law, to make contracts, but was permitted by statute to make contracts in certain cases, it was held to be necessary that the declaration in an action at law, founded on a contract of a married woman, must show the necessary facts which rendered her capable of making the contract. *Lewis* v. *Perkins, 7 Vr. 133; Hinkson* v. *Williams, 12 Vr. 35.*

But I think no argument can be drawn from the rules of pleading established by these actions at law, which applies to the present case for the reason indicated above, that this present case is not necessarily an action to enforce a contract, but rather an action to enforce an equitable lien upon property growing out of a transaction between husband and wife of which the wife's contract was only a part. The husband's executors are suing not necessarily for the amount of the wife's promissory note, but rather for such part thereof or for such sum of money as this court shall deem a fair and reasonable compensation to the husband for the rights which he surrendered for the benefit of the wife's separate estate. If the bill of complaint in this case had set forth all the facts bearing upon the fairness and reasonable-

ness of the amount which Mr. Terhune exacted from his wife, and this court from those facts should draw the inference that Mr. Terhune has exacted too large a sum, it would not follow that Mr. Terhune's executors would not be permitted in this suit to have a lien established for the amount which the court deemed reasonable and fair.

The conclusion would seem to be that where there is a substantial advantage conferred by the husband upon the separate estate of his wife in reliance upon her promises to pay him a sum of money, a bill in equity filed to enforce that promise, or to establish the husband's equity growing out of the transaction of which the promise was a part, need not set forth the facts to show the court that the husband did not in any degree overcharge the wife for what he did for the benefit of her estate. The reason, in brief, is that even if the court finds that the husband did overcharge his wife, the correction can be made without defeating the husband's claim to that amount of compensation which the court deems fair.

Apart from the question of the amount of the husband's lien there does not seem to be any defect in the case for equitable relief which the bill sets forth. The particular transaction which resulted in the defendant's giving to her husband her promissory note for $1,000 was only part of a general arrangement or regulation of their affairs which the husband and wife had adopted and which, under the circumstances, appears to have been reasonable and fair. Each had real estate which he or she might wish to convey. Each recognized the rights of the other in respect to any such conveyance. If either wished to convey, the other was to receive compensation for his or her co-operation, which was to be agreed upon. The wife, it seems, made the first conveyance and agreed to pay the husband $1,000 as the consideration of his joining in the deed. The turn of the husband to pay came next and then the wife not only demanded $1,000 from her husband, but was so far removed from any undue influence or coercion exercised by him upon her that she compelled him against his wish to pay the $1,000 in cash instead of her accepting the surrender of her note which he then was holding against her.

It is also a fact of great significance that the wife paid the

annual interest on the whole note apparently without complaint for many years, and the last of these payments was made after the wife had left the home of her husband and moved to another place. The letter which accompanied the wife's check for this last payment, dated April 4th, 1899, makes no suggestion that she was paying interest on a contract which was unfair, or which she had not understood, or that the amount upon which she paid interest was excessive. It may be added that the whole course of dealing between the husband and the wife, set forth in the bill of complaint, in which this promissory note was given by the wife to her husband, indicates strongly that the wife was at all times well able to take care of herself and protect her own interests.

I shall advise an order overruling the demurrer.