CELIA SOBEL, petitioner-respondent,

*v.*

ALEXANDER SOBEL, defendant-appellant.

[Argued October term, 1925.  Decided March 26th, 1926.]

1. A decree *nisi* in a divorce suit is a conditional divorce, becoming absolute only upon the happening of a prescribed contingency.

2. The marriage relation is a status governed by a declared state policy, and one of the principal duties arising out of the marital tie is the duty of the husband to provide suitable support and maintenance for his wife, and this duty does not arise out of any contract between husband and wife to that end, but out of a state policy, recognized and enforced by the civil and common law.

3. Where a release from all claims whatever was given by a wife to her husband after a decree *nisi*, but before a decree final in a divorce suit, and such release and settlement was not made under the sanction of the court, such release does not bar the allowance of alimony to the wife where the provisions of the contract between them are not adequate for her support.

---

On appeal from an order of the court of chancery, for permanent alimony, advised by Vice-Chancellor Bentley.

*Messrs. Weinberger & Weinberger (Mr. Harry H. Weinberger, of counsel), for the appellant.*

*Mr. John A. Platoff, for the respondent.*

The opinion of the court was delivered by

KALISCH, J.

This is an appeal from an order made by Vice-Chancellor Bentley, that the appellant shall pay to the petitioner or to her solicitor the annual sum of $1,200, in monthly installments of $100 each, on the first day of each month thereafter,

commencing on April 1st, 1925, and that he pay costs and a counsel fee of $350. The appellant and petitioner were married on November 3d, 1907. On the 23d day of January, 1922, they were divorced, and in the decree application for alimony was reserved. At the time of the decree *nisi* and for a long time prior thereto, the husband was paying to the petitioner, irregularly, $5 a week for her support, by virtue of an order made by Recorder Young, of the city of Paterson, where the petitioner and defendant resided. It does not appear that any alimony *pendente lite* was applied for in the divorce proceedings. After the decree *nisi* and during its pendency negotiations were entered into between husband and wife, eventuating in the execution of a general release, by the wife, upon the payment to her of $6,000, by her husband, releasing him, "his heirs, &c., of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity which against Alexander L. Sobel I ever had, now have or which my heirs, &c., hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents."

The release appears to have been executed on the second day of February, 1922, about ten days from the date of the decree *nisi*. It is this general release which the appellant interposed, as a bar, in the court below, to the application for permanent alimony. From the testimony taken upon the application it appeared that the consideration of the release was the sum of $6,000 paid by the appellant to the respondent, and it is without question that she accepted that sum in full discharge of the husband from any further claim upon him, arising out of the marital status, which, at the time the settlement was made, had not been finally dissolved.

The testimony further disclosed that the respondent had used up the money given to her by the appellant in discharging

old debts and in providing for her and her children's subsistence, and that she was without means, and that the appellant was in easy and flourishing circumstances.    It is apparent from a clear reading of sections 20 and 21 (*2 Comp. Stat. p. 2035*) that a decree *nisi* does not sever the bonds of matrimony, but that the marital tie between husband and wife still subsists until after the expiration of six months from the entry of such decree and a decree absolute is entered. *Markowitz* v. *Markowitz, 94 N. J. Eq. 23.*    Although Chancellor Walker does not so declare in express terms, in his opinion in the case, it is the only reasonable inference to be drawn from what he decided.    In *Grant* v. *Grant, 84 N. J. Eq. 81,* Vice-Chancellor Lewis (at *p. 84*) says: "A decree *nisi* is a conditional divorce, becoming absolute only upon the happening of a prescribed contingency.    *14 Cyc. 711.* Such a contingency in our state is the non-showing of cause why the decree should not be made absolute."    This seems to be a proper characterization of the nature of a decree *nisi.* In *Fox* v. *Davis, 113 Mass. 255,* the court (at *pp. 258, 259*) said: "A divorce *nisi* under *Comp. Stat. 1870 ch. 404,* does not sever the bonds of matrimony, and she is still a married woman."    *Edgerly* v. *Edgerly, 112 Mass. 53.*    See, also, *Sparhawk* v. *Sparhawk, 114 Mass. 355.*

The rights of the litigants must, therefore, be considered and determined from the standpoint of the existence of the marital ties at the time the release was given by the wife to her husband, and in the light that such settlement was intended to be in full of all her claims, &c., against her husband that she then had and in the future might have.    Another essential factor which must be kept in mind and considered in determining the legal effect to be given to the settlement made between husband and wife is that the marriage relation is a *status* governed by a declared state policy, and, hence, the state, for the conduction of the public welfare, is largely concerned in carrying out its legislative policy. One of the principal duties arising out of the marital tie is the duty of the husband to provide suitable support and maintenance for his wife.

This is a common law duty arising out of the *status* of wedlock. The obligation to support and maintain the wife does not arise out of any contract between husband and wife to that end, but out of a state policy, recognized and enforced by the civil and common law.

In *Calame* v. *Calame, 25 N. J. Eq. 548,* Chief-Justice Beasley, speaking for this court, with his characteristic perspicacity, points out (at *p. 552*) that though "the general rule is clear that at common law a contract made between married persons will not be binding either in equity or in a court of law," nevertheless, this rule was not absolutely inflexible, for on some occasions it would bend in favor of equities. The learned jurist then proceeds to demonstrate that in settlements made which were for the wife's benefit and welfare, courts of equity invariably gave their aid to enforce the provisions of such settlements. He, however, reached the conclusion that the court of chancery was without power to award alimony in gross. It is to be particularly noted that this allowance of alimony in gross was objected to by the husband. The question whether the court of chancery has power under the statute to allow alimony in gross against the consent of the husband is not before us. *Calame* v. *Calame, supra,* decides that the court is without such power. And the facts of the instant case do not present the question. The question here raised is as to the legal effect of the settlement made between the parties out of court.

A different situation might have arisen in the present case if the settlement arrived at between the parties had received the sanction of the court. There seems to be no good and sufficient reason why alimony in gross may not be allowed and enforced when assented to by the parties, and the court of chancery, as the representative of the state, to guard its interest and to enforce its statutory policy, in relation to marriage and divorce, sanctions such a course. It has already been observed that a court of equity will enforce a provision of a contract made in favor of the wife, and *Calame* v. *Calame, supra,* illustrates the view that where such a provision has

been made by the husband, it will be enforced in a court of equity.

The learned author of the opinion makes it quite clear that the prime question is whether or not the provisions for the wife are found to be suitable, after the court has looked into the arrangements and their surroundings. It is therefore in the light of the principle enunciated by this distinguished jurist and applied in that case that no substantial distinction can be drawn between the exercise of the power of the court of equity to decree the enforcement of a provision of a contract between husband and wife, which provision is for her benefit, and found to be adequate for her support, and the exercise of such power by the court, where it appears that the parties have agreed upon a settlement as to permanent alimony for the future support of the wife and submitted the same to the court for approval, and the court, after due investigation, finds the provision for the support of the wife to be adequate, to make a decree accordingly. In the instant case, no such course was followed. The court, however, inquired into the circumstances of the litigants, and under the evidence found that the provision made for the wife's support was inadequate and that she was in needy circumstances, and, therefore, the court very properly made the order for permanent alimony.

The order appealed from is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, McGLENNON, KAYS, HETFIELD, JJ.   12.

*For reversal*—None.