Complainant sues her former husband on an agreement made between them while they were man and wife, and during the pendency of a divorce suit in this court. For a valuable consideration the defendant agreed, among other things, to pay complainant $10,000 per annum during her life in equal monthly installments beginning with the entry of a final decree in the divorce suit. Complainant prays specific performance of the agreement and especially that defendant be decreed to pay her the sum of $11,900 which is in arrears. Defendant has answered and complainant now moves to strike the answer.
The answer consists of a general answer, three separate defenses and a counter-claim. By the general answer, all the allegations of the bill are admitted except the averment that complainant has performed the terms of the contract on her part and that defendant has failed to make the payments specified in the contract. The affidavits submitted on the motion show that this denial is sham.
The first separate defense is that the agreement was collusively entered into in order to facilitate the procurement by complainant of a decree for divorce. Complainant's affidavit denies collusion, but defendant swears to the contrary and so raises an issue of fact which can be decided only after final hearing. The defense, if proved, is good. Dennison v.Dennison, 98 N.J. Eq. 230; 99 N.J. Eq. 883. Complainant, however, urges that it is unavailable, citing Hedges v.Hedges, 112 N.J. Eq. 111, in which Vice-Chancellor Ingersoll said, "even if there was collusion in this case, the defendant *Page 191 
therein cannot now take advantage of such fact because the parties are in pari delicto." But the "defendant therein" was the complainant in the suit before Vice-Chancellor Ingersoll. The decision is an illustration of the maxim, he who comes into equity must come with clean hands. The maxim is applicable only to the actor, to one who voluntarily comes into court, and not to one who is brought in at the suit of another. Thomas v.Flanigan, 99 N.J. Eq. 198. If there are intimations to the contrary in Stevens v. Wallace, 106 N.J. Eq. 352, and Marra
v. Marra, 104 N.J. Eq. 18; 106 N.J. Eq. 330, they should not be followed. Where the parties are equally in the wrong, it is the defendant and not the plaintiff whose position is the stronger.In pari delicto potior est condition defendentis.
Again, complainant presents on this motion the record of judgments obtained by her in New York on this contract, for earlier installments than those which she now seeks to recover. She contends that defendant is estopped from asserting the defenses which he has pleaded in the present case. According to established practice, to secure the benefit of the judgments, she should have pleaded them. Water Commissioners v. Cramer,61 N.J. Law 270. But counsel have argued the effect of the judgments as if they had been pleaded, and I will follow their example.
"The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case, a judgment upon the merits is an absolute bar to the subsequent action. In the latter, the inquiry is whether the point or question to be determined in the latter action is the same as that litigated and determined in the original action." Miller v. Stieglitz, 113 N.J. Law 40. A proper test for determining whether the two actions are for the same claim or demand, is "whether the same evidence which is necessary to sustain the second action would have been sufficient to authorize a recovery in the first." Hoffmeier v. Trost,83 N.J. Law 358; Sarson v. Maccia, 90 N.J. Eq. 433; Smith v.Fischer *Page 192 Baking Co., 105 N.J. Law 567. It is plain that the present suit is not brought for the same cause of action as either of the New York actions but is brought for later installments under the contract. Indeed, if this were not so the complainant, who relies on the New York judgments to bar the defense, would find them a bar to her complaint, since the cause of action would have merged in the judgments.
In a second suit between the same parties for a different cause of action, only those matters within the issues actually litigated and determined in the first suit are res judicata.Nagle v. Conard, 96 N.J. Eq. 61. The estoppel does not cover matters which might have been, but were not, litigated and determined. Schilstra v. Van Den Heuvel, 82 N.J. Eq. 612. A forcible illustration is Mercer County Traction Co. v. UnitedNew Jersey Railroad and Canal Co., 64 N.J. Eq. 588, in which the petitioners relied in part upon an ordinance which had already been sustained on certiorari. Vice-Chancellor Reed held that the judgment in certiorari established the validity of the ordinance only as against the reasons filed in that proceeding, and did not estop the defendant from asserting the invalidity of the ordinance on other grounds.
In one of the New York actions Mrs. Phillips took judgment by default. It is sometimes said that a judgment by default is conclusive in a second suit, on another cause of action, as to the material facts well pleaded in the complaint upon which the default judgment was based. Certainly the estoppel is no broader.34 C.J. 892. A narrower statement of the estoppel is contained in Cromwell v. Sac County, 94 U.S. 351; 24 L.Ed. 195. "A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim." To the same effect is Skinner v.Franklin County, 56 Fed. Rep. 783; 6 C.C.A. 118. A judgment by default does not estop defendant as to matters which he might have affirmatively pleaded.
In the second New York suit, the only issue raised was whether the installment for June, 1932, had fallen due under *Page 193 
the contract when the suit was brought; none of the defenses raised in the present suit was pleaded or considered.
Neither New York judgment estops defendant from relying upon his first separate defense or upon his other defenses considered below.
The second defense reads as follows:
"The agreement upon which specific performance and the decree of this court for the payment of money is sought, is, in so far as the provisions thereof relate to the payment of $10,000 per year during the life of the complainant, an agreement respecting alimony, support and maintenance of the complainant, made during the time when divorce proceedings were pending between them in the State of New Jersey; such agreement was entered into without the consent or approval of this court; the terms and conditions thereof have not been approved by this court; the terms and conditions thereof in so far as they require the payment of $10,000 per year to the complainant during her life are unfair, inequitable and unjust in so far as defendant is concerned. Said terms and conditions were and are also unsuitable and improper for the support of the complainant, were and are greatly in excess of her just needs and demands, and were and are far beyond the power and ability of the defendant to comply therewith. Defendant was and is unable to comply therewith and says that by reason thereof, it is inequitable that said agreement should be enforced or that defendant be decreed to comply therewith."
Contracts between husband and wife, void at law, are good in equity if fair and fairly obtained. Wood v. Chetwood, 44 N.J. Eq. 64.
These transactions are examined by courts of equity with an anxious watchfulness and caution and dread of undue influence.Farmer's Executors v. Farmer, 39 N.J. Eq. 211. "Contracts of this class do not always rest in point of validity on fixed and palpable rules of law; sometimes they approach closely to the field of discretion," said Chief-Justice Beasley, in Woodruff
v. Clark, 42 N.J. Law 198, and he pointed out the basic reason, namely, the union and confidence between the parties which raised the question of coercion and undue influence. *Page 194 
None of the cases already cited arose upon a separation agreement or an agreement to pay alimony, but they disclose clearly the nature and effect of executory contracts between husband and wife. If they were fairly obtained, they are enforceable in equity to the extent that they are fair. In determining whether a contract was fairly obtained, the court is watchful for indications of undue influence and coercion. In deciding whether the contract is fair, the court examines carefully the consideration. Ireland v. Ireland, 43 N.J. Eq. 311.
A wife's promissory note, for instance, while evidence of a debt, is enforceable only to the extent of the debt; beyond that, it is not considered fair. Demarest v. Terhune, 62 N.J. Eq. 663.
The earliest of our cases on a contract to pay alimony isCalame v. Calame, 25 N.J. Eq. 548. In the wife's divorce suit, chancery decreed that the husband pay a gross sum for alimony. On appeal it was held that the statute did not authorize alimony in gross but the decree was affirmed because the husband had agreed to pay his wife the same sum. Chief-Justice Beasley concluded: "The court should undoubtedly look into these arrangements and their surroundings, but when it appears that the separation of the wife, forming the groundwork of the agreement, was justifiable and the provision is suitable, to this extent it is, in my judgment, safe to say that the contract should be upheld."
Next comes another opinion of Beasley, Aspinwall v.Aspinwall, 49 N.J. Eq. 302, a suit by a wife for the specific performance of a separation agreement. The decree was affirmed that the moneys stipulated for should be paid by the husband. (The decree only applied to moneys which had become due and not to future payments. 53 N.J. Eq. 684). "These stipulations for the support of the wife who is living separate from her husband with his assent, have always been regarded as enforceable in a court of equity in this state. * * * And it would be singular indeed if the court should refuse to carry into effect stipulations of this character; for as there is nothing illegal in the fact of husband and wife living apart by mutual assent, and inasmuch as under such *Page 195 
conditions the husband would be liable for the maintenance of the wife, it is difficult to see why equity should not enforce the payment of the sum of money that both parties have agreed to be a reasonable amount for that end."
The Aspinwall decision was followed in Mockridge v.Mockridge, 62 N.J. Eq. 570; Halstead v. Halstead, 74 N.J. Eq. 596,
and Mayhew v. Chapman, 116 N.J. Eq. 254.
A case which at first glance seems to run counter to our other authorities is Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529.
After a final decree for divorce and on the eve of an application for an increase in alimony, the parties agreed on $40 a week alimony. Suit on the agreement brought by the woman was dismissed in chancery on the ground that her remedy was at law since the contract was not one between man and wife. The court of errors affirmed, but for other reasons, saying that the court of chancery had power "to regulate the amount of such alimony from time to time, to supervise agreements between the parties in that regard, to enforce them if deemed just, and to decline to recognize them otherwise. Calame v. Calame, supra. But these powers grow out of the existing or pre-existing marital status and are not controlled by the rules of specific performance of contracts. The bill in this case, being framed as a bill for specific performance, was properly dismissed as such and the decree will accordingly be affirmed but without prejudice to an application for suitable alimony, on which application the wife may legitimately ask the court to recognize the agreement as a basis for its award and the court will recognize it or not, as it thinks proper."
While the opinion does not set forth the prayer of the bill, it is evident that Mrs. Apfelbaum sought a decree for the future performance of the agreement, rather than a judgment for the arrears. Otherwise the court would not have suggested that her proper remedy was an application for alimony. The rule remains unaffected that a wife may recover in equity the amount due and unpaid on her husband's agreement to pay separate maintenance or alimony, provided the agreement was fairly obtained and is fair. *Page 196 
The second defense alleges that the contract is unfair. In resisting the motion to strike, defendant presents an affidavit which amplifies the defense; he states that due to a change in his own financial situation, the payment of $10,000 a year has become a great hardship to him.
In Buttlar v. Buttlar, 57 N.J. Eq. 645; 38 Atl. Rep. 300,
the husband made a similar defense. Vice-Chancellor Pitney held that defendant might avail himself of any equitable (as distinguished from legal) defense, and that the answer presented such a defense, and accordingly dismissed the bill. The court of errors and appeals strongly intimated that this defense was not good but, on examining the facts, found the defense not made out, and a decree was rendered for complainant on the contract. The court considered by way of analogy the rules relating to the specific performance of ordinary contracts, "where the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach."
The defense that a change of circumstances has made the bargain a hard one, as applied to an ordinary specific performance suit was fully expounded by Vice-Chancellor Pitney in Keim v.Lindley, 30 Atl. Rep. 1063 (at p. 1084). He states "the general and familiar rule that the fairness of a contract must be judged of, as matters stood at its date." This rule has been repeatedly followed in suits by a wife on a separation agreement and it has uniformly been held that hardship or inability to perform arising from a chance in the husband's circumstances, is not a valid defense. Vandegrift v. Vandegrift, 63 N.J. Eq. 124; Stein v. Stein, 112 N.J. Eq. 8; Corrigan v. Corrigan,115 N.J. Eq. 49.
The other branch of the second defense is that the contract was made without the approval of the court. Here, defendant relies onSobel v. Sobel, 99 N.J. Eq. 376; Greenberg v. Greenberg,Ibid. 461; Baumgarten v. Baumgarten, 107 N.J. *Page 197 Eq. 274; Glasco v. Glasco, 112 N.J. Eq. 114. But these cases by no means hold that, unless approved by the court, a contract of this nature is unenforceable at the suit of the wife. It is only when the husband relies on the contract to defeat the wife's claim for alimony that the court's approval of the contract, obtained when the contract was made, becomes material.
The third defense which is in the nature of a demurrer, states that the bill does not show an equitable cause of action. To this I cannot agree.
By way of counter-claim, the defendant repeats the allegations of this second defense already quoted and prays that the court may revise and modify the agreement between the parties so as to provide for such payments as are equitable, just and fair. If a contract is the product of fraud, mistake, coercion, or the like, a court of equity may annul it. If, through mistake, it does not state the real agreement, the court may reform it; but the court cannot make a contract for the parties or revise their agreement. Contracts arise only from the voluntary acts of the parties. The counter-claim alleges no facts which may be a basis for reformation or other equitable relief. Let the counter-claim and the answer, except the first separate defense, be stricken. *Page 198