GOTTFRIED KRUEGER

*v.*

JOHN L. ARMITAGE.

[Filed September 2d, 1899.]

1. In a suit to compel, for false representations, repayment of money paid for stock, brought by the purchaser against one who was treasurer of a mining corporation, it appeared that complainant purchased of defendant certain shares of stock and paid therefor partly in cash and gave a mortgage for the balance of the price, at the request of the vendor, to a third party, and that he was induced to purchase said stock by the false and fraudulent representa-

tions of defendant. The mortgagee not being made a party nor the validity of the mortgage questioned—*Held*, that the remedy at law being adequate, equity would not entertain the bill.

2. One who, after he has discovered the falsity of representations made by an officer of a corporation which induced him to purchase shares of its capital stock, institutes insolvency proceedings based on his rights as a stockholder, cannot rescind the contract of purchase, but is relegated to an action at law for damages for the fraud.

3. In an action by complainant against defendant to recover the money paid because of false representations as to the value of the land, whereby he was induced to purchase the shares, that the want of legal corporate existence is not a ground for equitable jurisdiction.

On bill, &c.

*Mr. Joseph A. Beecher*, for the complainant.

*Mr. James M. Trimble*, for the defendant.

EMERY, V. C.

The defendant in this case has, by his answer, objected to the complainant's right to relief in a court of equity, praying the benefit of a demurrer, and the first question to be settled is whether the complainant, on the case as disclosed by the bill and proofs, presents a demand of a legal rather than an equitable nature. I intimated at the hearing my doubts as to the existence of an equitable basis of suit, and on further consideration these doubts are confirmed.

As now presented the case is substantially one where the complainant seeks a decree against the defendant solely for the repayment by defendant of the amount paid by complainant for the purchase of stock in a mining company. The purchases of stock were made by complainant at two different dates—ten shares being purchased on or about December 2d, 1893, for $500, at the rate of $50 per share, and five hundred shares purchased on or about January 20th, 1894, for $24 per share ($12,000), of which $8,000 was paid in cash and $4,000 by a mortgage given by the complainant upon lands owned by him, alleged to be worth $12,000. All the payments of cash were

made by the complainant's checks, payable to the company itself, or to defendant as its treasurer, and the complainant upon giving the mortgage was credited with $4,000 as paid to the company in cash. For all of the stock purchased by complainant, certificates were issued directly to him by the company for full-paid non-assessable stock, and these certificates were issued in lieu of equal amounts of full-paid stock surrendered by the defendant to the company for the purpose of its issue, and under agreements made between defendant and the company, at or about the time of its organization, for the issue of full-paid stock to defendant for property to be purchased, and for the transfer by complainant to the company of a portion of the stock so issued (nine hundred and sixty shares of 1960) for about $50 per share. The directors of the company, at a meeting held January 22d, 1894, at which complainant was present as director, authorized defendant to consummate a sale of five hundred shares for $12,000 in cash. This sale was made to complainant of five hundred shares for $12,000, of which $8,000 was paid by complainant in cash, and the mortgage was credited to complainant as a cash payment of $4,000 on the stock. The mortgage was given not to the company or to the defendant, but at the request of defendant was made to one Smith, who, at the time of the organization, held the title to the mining property, in trust for another company in which he (Smith) and the defendant and others were the stockholders. Smith subsequently (September 21st, 1893) conveyed the property to defendant, who afterwards by deed dated December 18th, 1893, conveyed to the company. This mortgage of $4,000 has not been paid, and Smith is not a party to this suit. Complainant alleges and upon his proofs claims to have established that his purchases of the stock were made from the defendant, and that his investment in the stock and advancement of money for this purpose to the company were procured by the false and fraudulent representations of the defendant as to the title to the mining property and the company's interest therein, and the fraudulent suppression from complainant of the real ownership thereof and of his (Armitage's) interest therein, and by defendant's false represen-

tations as to the quantity and quality of the ores in the mines, especially by the exhibition to him of a report as to the mines and ores, which Armitage knew to be false. The proofs are alleged to sustain these claims, and a decree for repayment of money invested, including the amount of the $4,000 mortgage, is claimed. The case, so far as the right of recovery is based on fraud or false representations, is of the same character as *Crater* v. *Binninger, 4 Vr. 513 (Errors and Appeals, 1869)*; *Smith* v. *Duffy, 28 Vr. 679 (Errors and Appeals, 1893)*, where damages were recovered at law, unless the fact that $4,000 of the purchase-money was paid by the execution of a mortgage to Smith at defendant's request gives a basis for suit in equity. But inasmuch as Smith, the holder of the mortgage, is not a party to the suit, no adjudication as between Smith and complainant, as to the validity of this mortgage in Smith's hands can be made in the suit, and as between complainant and defendant, the fact that a mortgage, outstanding in the hands of a third party and not yet paid, was part of the consideration paid by reason of the defendant's fraud or false representations, goes only to the amount of damages either in a court of equity as well as of law. Complainant, in either court, in order to include the amount of the mortgage as damages against defendant, would be obliged to show that he was liable for its payment in the hands of the assignee. So long as it remains outstanding and in the hands of one not a party to the suit, it cannot, as it seems to me, be an element of the case to make the claim based on false representations an equitable claim instead of a legal one. In support of the jurisdiction the settled rule is relied on that equity has jurisdiction concurrent with law in cases of fraud, and it is insisted that cases of false representations, inducing purchases or investments in stock, are included within the concurrent jurisdiction. But where, as here, the right relied on is a right recognizable at law and the remedy sought is purely pecuniary and legal, the jurisdiction in equity, even if it be concurrent with that of courts of law, will not be exercised where the remedy at law is adequate, certain and complete. The settled principles adopted by the American courts are stated in

*2 Pom. Eq. Jur. p. 410,* ¶ *914,* &c., and the cases there collected. The doctrine of some of the English cases, where bills in equity have been entertained in cases of fraud in the sales of personal property for the simple recovery of the same damages which might be recovered in an action at law, has not been followed in the American courts, which have regarded the assumption of such jurisdiction as a deprivation of the right of trial by jury, where such trial affords an adequate and complete remedy. The reason of the jurisdiction assumed by courts of equity in England, was that equity originally took jurisdiction in the absence of any jurisdiction at law. *Slim* v. *Croucher, 1 DeG., F. & J. 518, 527, 528;* and see *Buzard* v. *Houston, 119 U. S. 347, 352,* for Mr. Justice Gray's comments on the English doctrine.

In the present case the bill was not filed for discovery in aid of a suit at law and prayed an answer without oath, and the whole case therefore, so far as relates to the question of false representations and damages, is purely one for a trial by jury. In all of the cases in this state to which I have been referred by counsel, where the equitable jurisdiction in cases of fraud in the sale of personal property has been sustained, the necessity of some equitable remedy or relief beyond the recovery of the money paid or damages has been disclosed. But where no remedy under a bill in equity is sought or is proper other than the return of money paid or damages on the purchase of stock or other personal property, and the payment of the money was induced by fraud or false representations which are actionable at law, and the assessment of damages may be made as well by a jury as by a court of equity, the jurisdiction in such cases should not be exercised if the objections to the jurisdiction are taken in time. Complainant in the present case, as appears by his bill and proofs, had, not later than August, 1894, knowledge or information sufficient to put him on inquiry as to the frauds and false representations of defendant, set up in the bill as a basis of recovery from defendant of the money paid by complainant to the company. These frauds, if effective for that purpose, would also or might have been equally effective as the

Krueger v. Armitage.

basis for rescission of the sale, in a suit against the company and Armitage. Such knowledge imposed on him the duty of promptly rescinding the sale, if he elected to rescind instead of affirming the sale, and suing for damages for the fraud. *Conlan* v. *Roemer, 23 Vr. 53, 58 (Supreme Court, 1889).* Complainant has failed to take any proceedings to rescind the sale as against the company, and by reason of this failure and by instituting proceedings in insolvency based, so far as appears, on his rights as a stockholder, he has terminated his right to any relief, on the basis of setting aside the sale of the stock as between him and the company, in a suit against the company alone, or in connection with Armitage, and is remitted to his remedy for the fraud, if any, committed on him by defendant in inducing him to make the purchase of the company. These frauds and misrepresentations alleged support a legal action for fraud to the same extent as they would support an equitable suit; the remedy is the same, and on the case as now presented there are no grounds for recovery in equity different from those which would support an action at law.

I must, therefore, in view of the defendant's objection taken in his answer, decline to entertain the jurisdiction, so far as complainant's case is based upon alleged fraud or misrepresentation of defendant in procuring complainant's investment in the stock. Complainant alleges in his bill that the money paid by him to the company for the stock was misappropriated by defendant to his own use, and it was urged at the hearing that complainant had an equitable claim based on a right to follow this money in defendant's hands. This claim, however, is not sustained by the proofs. Moreover, the claim to follow his money, if it existed, is an equity based solely on complainant's right to rescind a sale, which was in form at least a sale by the company to complainant, and have back his money against both the company and Armitage, on the theory that the sale was in fact a sale of Armitage's stock, for which he received complainant's money through the medium of the company, and such claim could only be enforced by a bill to rescind the sale against both the company and Armitage, filed

promptly after he had knowledge or was put upon inquiry, as to the relations between the company and Armitage, in reference to the issue of the stock which he purchased. He had such knowledge not later than August, 1894, and by the failure to proceed against the company to rescind, and by proceedings against the company subsequently in insolvency as a stockholder, he affirms the sale, so far as the company is concerned, and cannot recover the purchase-money or follow it in Armitage's hands as his money, in a suit to which neither the company nor its representative is a party.

Another basis of equitable jurisdiction was set up in the bill, it being the claim that the company was never legally organized and never had in law any existence at all, or at least had no existence before October 16th, 1893, at which date the corporation certificate was filed in the office of the secretary of state. The contract between the company and Armitage for the purchase of the mining property was dated July 26th, 1893, the day of the signing of the organization certificate, in which the following day, July 27th, 1893, was named for the commencement of the corporate existence. It is therefore claimed that the contract for the purchase was wholly ineffectual and void as the company had no existence, and that all the acts relating to the purchase which took place prior to the organization must be held to be acts of the individuals only, including defendant, Armitage, the vendor named in the contract. But inasmuch as the company received the deeds from defendant under the contract in December, 1893, or January, 1894, and actually proceeded with its business as a *de facto* company until wound up by insolvency proceedings instituted in December, 1894, by complainant, who for several months previously was a director and officer of the company, and inasmuch as in the insolvency proceedings all the assets of the company, including the mining property in question, were sold by the receiver for the benefit of the company, it seems clear that the want of legal corporate existence of the company cannot be the basis for any equitable jurisdiction, in a suit of this kind, arising out of the original purchase of the stock, in which only complainant and defendant are parties, and

the remedies must reach only the defendant, and in which complainant, if he recover at all, can have only a money decree against defendant. The question of the corporate existence of the company, if it be an element of any relevancy at all in this suit, is only so as a feature of the case showing want of consideration in complainant's payment or fraudulent suppression by defendant to complainant's damage. In this aspect, but in no other, as it seems to me, it may be connected with a claim actionable at law for the recovery of the money paid or damages.

I will therefore advise the dismissal of the bill, without prejudice to an action at law.