William H. Bennett died in 1913, survived by his widow Ida and his two sons Robert and Chester. By his will and codicil he created three trusts, with Fidelity Union Trust Co. as trustee.
The first trust provided that the net income be paid to his wife during her life or widowhood, "and upon her death or remarriage whichever shall sooner occur, to divide the principal between my said two sons."
The second trust provided that the net income be paid equally among his wife and two sons during the life of the wife, "and then to divide" (the principal) "equally between my said two sons."
The third trust provided that the income be divided among the wife and the two sons during the wife's life, and thereafter between the two sons until the younger attained age 50, "when (the principal) shall be equally divided between my said sons."
By the sixth clause of his will he further provided:
"The lineal descendants of each of my said sons who shall predecease me or who shall predecease any period of distribution of principal provided for in this my will, shall stand in the parent's place both as to payment of principal and income and shall share equally in such payments."
By the seventh clause he provided that the gifts to the wife were to be in lieu of dower.
The wife has not remarried; she and the two sons are still living; the younger son has attained the age of 50. Each of the sons has living children, — of whom one is still a minor, aged 18, and the others have attained majority. It does not appear whether or not any of these children (grandchildren *Page 457 
of testator) have children of their own (great-grandchildren of testator). If there be any such they also, — being "lineal descendants" of the testator's two sons, — should have been made parties; and should be made parties prior to decree. For present purposes, however, their interests may obviously be considered as identical with that of the infant defendant, and adequately represented by the brief of the solicitor specially appointed for the latter.
In December, 1936, immediately prior to the filing of the bill herein, the widow and each of the two sons executed an agreement whereby the wife "renounces and releases" her life estates in the three trusts and agrees that upon the request of the trustee "she will make, execute and deliver proper instruments to effectuate such renunciation and release;" the two sons agree to institute suit in chancery to procure "an acceleration and termination and distribution of said several trusts between them in equal shares," and further agree that "upon the termination and distribution of the said trusts, they will support and maintain the (widow) during her natural life, to the extent of at least $3,000 per year," and will give such security for such support "as the court shall direct." The agreement is to be void "if the court shall decline to accelerate and terminate all of said trusts."
The sons thereupon filed this bill, and ask decree accelerating said trusts and directing an immediate distribution of the principal between the complainants in equal shares "in accordance with the terms of the said will and codicil."
By their answers the widow and the four mature grandchildren consent to, and join in asking, such decree. It is said that the minor grandchild, aged 18, would do likewise if he were legally able to do so. However he cannot legally do so, nor can anyone else on his behalf; and it is obvious on the face of the record that such a decree would be unfavorable to his interests. His interest must therefore be considered; likewise the interests of any great-grandchildren in esse or in posse.
The meaning and effect of the will in question has already been before this court in a prior suit among the same parties *Page 458 
brought in 1934, — Bennett, et al, v. Fidelity Union, c.,Co., Docket 102, p. 161, — in which the present complainants sought a decree that they (having both attained aged 50) were entitled to distribution of the corpus of the third trust above mentioned, notwithstanding the widow was still living. This court declined to enter decree as sought by complainants, and instead decreed that the complainants had each a vested interest in one-half the corpus of this third trust, subject to divestment in favor of his issue, if any, in the event of his death during the life of the widow, and that the corpus was to be divided on the death of the widow. This was affirmed on appeal, — 121 N.J. Eq. 612,192 Atl. Rep. 232, — and is of course res adjudicata
in the instant case.
The present contention of complainants is based on the agreement (hereinbefore mentioned) subsequently made between complainants and the widow. It is argued that (1) this agreement is a renunciation or release by the widow of her life estate; (2) the effect of this agreement is to terminate the life estate of the widow; (3) thereby the time of distribution has been accelerated to immediate operation; and (4) complainants are therefore entitled to immediate distribution to themselves. This contention is made not only as to the "third trust" involved in the prior suit, but also as to the "first" and "second" trusts, as well. It appears that the corpus of the first and second trusts is about $15,000 each, and of the third trust, about $185,000, — a total of somewhat over $215,000.
The determination of the appellate court in the case ofSchmieder v. Meyer, 97 N.J. Eq. 335, 127 Atl. Rep. 162, seems to be partially on all fours with the case at bar, and protanto controlling. In that case there was a testamentary trust comprising a life estate for the life of testator's wife, and "after the death" of the wife the corpus to be divided equally among testator's children, "and if any child dies leaving lawful issue such grandchild or grandchildren shall receive the share of the parent." The widow accepted the terms of the will, but thereafter made an agreement with the children whereby she agreed to accept $20,000 in full settlement *Page 459 
of her rights under the will, — an agreement which the court held was in effect an assignment by the widow to the children, of her life estate. It was held that the period of distribution under the will was postponed until the death (or remarriage) of the widow; that the children had a vested remainder, (subject to the widow's life estate) which was however subject to divestment in favor of their children if they should predecease the death or remarriage of the widow; that there was therefore no merger of the life estate and remainder by the assignment (because the remainder was not yet absolute and indefeasible); and that the period of distribution was not accelerated.
In the instant case the will fixes the distribution period for the first trust upon the death or remarriage of the wife; as to the second trust, after the death of the wife; and as to the third trust (the largest), upon the concurrence of the death of the wife and the attainment of age 50 by both sons. The will further provides that the lineal descendants of each son who "shall predecease me or predecease any period of distribution of principal provided for in this my will shall stand in the parent's place both as to payments of principal and income." As has been conclusively determined by the decree in the prior suit, complainants have a vested interest in the remainder of the "third" trust but subject to divestment in favor of their issue if they die prior to the death of the wife. The same conclusion must of course likewise be reached in regard to the remainders in the first and second trusts.
Complainants differentiate the instant case from theSchmieder case by pointing out that their claim is not based upon an assignment and a theory of resultant merger, but upon a "renunciation and release" which they claim operated not to merge, but to terminate the precedent life estate. They further contend that although the will fixes the time of distribution at the death of the life tenant (the sons having already both attained age 50), nevertheless in the absence of the indication of any contrary intent in the will, the testator will be presumed to have intended, and the will will be interpreted to mean, that the distribution or payment to the *Page 460 
remaindermen shall take place at the termination of the life estate irrespective of whether such termination is by the death of the life tenant or results from some other cause or means.
That such a rule of construction is a part of the law in this state and will be applied in a proper case, is set forth and explained in Anthony v. Camden Safe, c., Co., 106 N.J. Eq. 41,149 Atl. Rep. 822. Prior to that it had been applied by Vice-Chancellor Grey in Beideman v. Sparks, 61 N.J. Eq. 226,47 Atl. Rep. 811, and unanimously affirmed on appeal, — 64 N.J. Eq. 374,55 Atl. Rep. 1132. In the latter case the life estate was eliminated by the life tenant's renunciation in limine, not by a subsequent surrender after a prior acceptance; but in theAnthony case the termination of the life estate was by a surrender after acceptance, — which is the situation claimed in the instant case.
Both the Beideman case and the Anthony case differed from the instant case in that neither of them involved any possible interest of a contingent substitutionary remainderman, — and there was no consideration given with respect to such a situation. There seems however no logical reason why the same rule of construction should not be applied irrespective of the presence or absence of contingent substitutionary remaindermen. The test remains the same, — did the testator intend that distribution to the remaindermen should be made on the failure or termination of the life estate other than by the life tenant's death, or that it should in all events await the death of the life tenant? Where the will is silent a rule of construction one way or the other, must be adopted. It is logical that the same rule should apply whether there be involved possible contingent substitutionary remaindermen or not. If there be such contingent interests created by the will, and if the provisions in that behalf together with the other provisions in the will, indicate an intent that distribution is not to take place until the death of the life tenant irrespective of any earlier failure or termination of the life tenancy, then of course the presumption fails, and no such acceleration results.
There is nothing in the Beideman or Schmieder cases to *Page 461 
indicate that the view of the appellate court would differentiate between cases where such contingent interests were involved and cases where they were not. Indeed the latter opinion gives rather the contrary impression, — for the will in that case (which provided for contingent interests) provided in terms for distribution on the death of the life tenant, yet the opinion says (p. 339, bottom): "the will provides for distribution at the termination of the life estate."
In Fisch v. Fisch, 105 N.J. Eq. 746, 155 Atl. Rep. 146,
Vice-Chancellor Church took the same view on this point.
Neither the Schmieder case nor the Fisch case involved a termination of the life estate by surrender after acceptance; so that neither one is exactly on all fours with the instant case. Nevertheless taking into consideration the Fisch case together with the Anthony case, supra, it is deemed that it must be held that where a will creates an equitable life estate followed by vested equitable remainders with contingent substitutionary remainders and directs that the remainders shall come into possession "on the death of the life tenant," the testator will be deemed, in the absence of indication of contrary intent, to have intended that payment or distribution should be made onany failure or termination of the life estate from whatever cause.
In the instant case the life estate did come into being and has been accepted and enjoyed for about twenty-five years. The question is, — has it now been terminated by the subsequent act of the life tenant?
The act which is relied upon by complainants as having accomplished such termination is the agreement hereinbefore mentioned. By the language of that agreement the life tenant "hereby renounces and releases her life estates" in the several trusts. Notwithstanding the use of the word "renounce" this of course is not a renunciation in the strict sense, — not such a renunciation, in limine, as was held operative in theBeideman and Fisch cases. It can be interpreted only in the sense of surrender and release.
A case quite similar to the present case was before this court in In re Nilsson, 112 N.J. Eq. 445, 164 Atl. Rep. 578, *Page 462 
in which there was a life tenant and remaindermen whose interests were subject to be divested by death prior to that of the life tenant. The life tenant, after acceptance and enjoyment, "renounced and released" to the remaindermen his life estate and all other interest. It was held, on the authority ofSchmieder v. Meyer, supra, that the distribution period was not thereby accelerated. The renunciation and release to the remaindermen was evidently viewed as not being, or having effect, different from the assignment in the Schmieder case. So far as concerns renunciation, strictly as such, the opinion states that the life tenant having accepted the life estate for a number of years, it was "too late for him to renounce." This cannot be deemed to indicate a determination that after acceptance by the life tenant, no termination of the life tenant's interest in any wise other than by his death, can avail to entitle the vested remaindermen to immediate distribution, and terminate the possible interests of the contingent remaindermen, — for, as already mentioned, it was decided in the Anthony case, supra, that a valid release and surrender from the life tenant to the trustee would effectuate a termination of the life estate. Also, as already pointed out, the question as to whether such a termination of the life estate thereby accelerates the time at which payment or distribution is to be made to the remaindermen, is a question of the testator's intent, to be ascertained from the entire will and the surrounding circumstances. It would seem, therefore, that the result in the Nilsson case is to be rested on the basis that a release to the vested remaindermen is nothing more than the equivalent of an assignment.
In the instant case the release is not expressly made to the remaindermen. Is there a release to the trustee; and if so, what is the result thereof?
The instrument does not express a release to the trustee. It says that the life tenant "hereby releases" but does not say to whom; the trustee is not a party to the instrument in fact, and is not even named as a party. The language of the agreement is (italics supplied) that "the said parties (i.e., the
remaindermen and the life tenant) have agreed to *Page 463 and with each other, as follows: The (life tenant) hereby renounces and releases her life estates in the said several trusts." It would seem from all this that the true interpretation of the instrument must be that, insofar as it is a release, it is a release to the remaindermen. If so, then under the Nilsson
case, it has not effectuated any termination of the possible interests of the contingent remaindermen.
In any event it seems clear that the instrument is not a valid and effectual release to the trustee, and that it was not even intended as such, — and this for two reasons.
In the first place, as already pointed out, the instrument is an agreement between the life tenant and the remaindermen, without the trustee being even named as releasee or as a party thereto, and the instrument further goes on to provide that the life tenant will execute and deliver, in the future, at the request of the trustee, "proper instruments to effectuate such renunciation (surrender) and release." The implication is of course that the life tenant considers that she has not as yet, by the agreement in question, effectuated such surrender and release.
In the second place, the agreement further provides that the whole agreement shall be void if the court shall decline to accelerate and terminate all of the trusts. Even if the agreement should in all respects otherwise be considered a valid and effectual release, it is clear that this provision prevents it from being an absolute and immediately effective release, it is a release valid and operative only conditionally, — i.e., on condition that this court decree an acceleration and termination of all the trusts. Certainly this court cannot say that therehas occurred an effective termination of the life estate, upon the basis of a release which is not absolute and immediately effective, but is expressly conditional upon the happening of an event which has not happened and is not even certain to happen. It may be argued that the release in terms is presently effective and subject only to a condition subsequent which may not happen. It is not perceived that this is material; the essential thing is that there has been no absolute and unconditional release. *Page 464 
In the view of this court, the agreement here sub judice does not constitute nor effectuate an unconditional termination of the widow's life estates, and hence does not, — (assuming, but not deciding, that otherwise it would do so), — afford a valid basis for a decree that the period of distribution has arrived and that complainants are entitled presently to receive the corpus.
It is unnecessary, in view of this result, to consider the question as to whether or not, under the whole will, the testator should be deemed to have intended that the distribution period was to occur on any termination of the life estate prior to the life tenant's death.