Subsequent to the prior determination in this cause, set forth in Bennett v. Fidelity Union Trust Co., 122 N.J. Eq. 455,194 Atl. Rep. 449, wherein it was held that no termination of the widow's life estate had resulted from her execution of the agreement of December 18th, 1936, the widow executed another instrument on November 5th, 1937, which *Page 199 
purports to release and discharge the trustee as to all her right, title and interest in the trust estate; and thereupon the complainants supplemented their bill and pray decree that by reason of such release the said life estate has terminated and that complainants are entitled to present distribution of the principal.
Two questions are therefore presented for determination: — 1. Has the widow's life estate been terminated by the new release? 2. Does the will evince an intent on the part of testator that the distribution of principal should be deferred until the death of the widow notwithstanding such prior termination of her life estate?
As to the first question, the determination of Vice-Chancellor Leaming in Anthony v. Camden Safe, c., Co., 106 N.J. Eq. 41,149 Atl. Rep. 822, seems controlling and dispositive. The present release in the instant case is in precisely the same form as that which was there held to effect termination; the proofs show that it was validly executed, upon legal and valuable and adequate consideration and with full intent and comprehension on the part of the releasor, after the benefit of independent advice.
It is argued by the trustee that by reason of the provisions of the prior agreement of December 18th, 1936, the present release was not immediately effective upon delivery, nor until the entry of a decree of this court adjudicating a termination of the trust and an acceleration of the date of distribution. The proofs however fail to support this contention. The present release is by its terms immediately effective; it was executed and delivered, not under the agreement of December 18th, 1936, but under a new agreement of November 5th, 1937, which expressly supersedes the former agreement; the agreement of November 5th, 1937, contains no expression whereby the operation and effect of the new release is in anywise deferred or made dependent or conditional upon the performance of any act or the happening of any other event, whatever.
As to the second issue, — it is contended, preliminarily, by the trustee and the guardian ad litem of the infant, (contingent *Page 200 
substitutionary remainderman), that an acceleration of the time of distribution cannot occur where future contingent interests would be cut off; and reliance in this behalf is placed on the appellate determination in Schmieder v. Meyer, 97 N.J. Eq. 335,127 Atl. Rep. 162.
It is true that in that opinion the court says, "We do not agree, however, as decided by the vice-chancellor, that the parties interested might accelerate the date of distribution and bring to an end the trust by mutual agreement." From a reading of the entire opinion, however, it is clear that the court did not mean to enunciate a rule that under no circumstances where there are contingent substitutionary remaindermen, can the interested parties terminate the trust and accelerate the date of distribution, — (notwithstanding that the quoted sentence, standing alone, would amply justify such a conclusion). For the court goes on to say, (as it had previously said in Beideman v.Sparks, 61 N.J. Eq. 226, 47 Atl. Rep. 811), that where a widow refuses or renounces a life estate under her husband's will, the remainder becomes immediately distributable. The opinion is perhaps not as definitely informative as might be desired, but it is the understanding of this court therefrom, that the result reached was based solely on the fact that the widow'sassignment of her life estate did not terminate that estate, and since it was not terminated, there was no acceleration of the date of distribution.
It is obvious that the question of when and to whom distribution is to be made, is basically a question of what was the testator's intent in that behalf as expressed in his will. The testator intended that the wife should take an estate for her life, (in one of the trusts it was an estate for life or widowhood), and that at the end of that life estate the corpus
should go to those persons whom he specifically designated in that behalf. The widow, however, cannot be compelled to take the life estate, — nor to keep it even if she does take it. If the life estate which he gave her should be refused, or subsequently given up, by her, her life estate is thereby terminated prior to her death. His intent that she should have *Page 201 
the fund for life is thereby rendered nugatory. To whom is it then to go? Naturally it is to go to whomsoever and at such time as he has directed, in such circumstances, by his will. But what does his will specify in this behalf? In most cases, just as in the instant case, the will does not specifically provide for such a contingency. Most people, — lawyers as well as laymen, — think of a life estate as ending at the death of the life tenant and not otherwise. Most wills, therefore, specify that the distribution which is intended to be made after the expiration of the life tenant's enjoyment of the property shall be made "at" or "after the death of" (the life tenant); and fail to contain any specific provision as to what shall happen to the estate if the life tenant, prior to her death, refuses to have anything more to do with it. In the absence of such specific provision, the will must be searched for some implied provision, — some indication of what the testator desires. If any such can be found, it will control. If nothing of that kind can be found, the court must needs dispose of the estate in some way, and hence makes such disposition as it thinks the testator would have made if he had thought about it. That disposition is the one which in the judgment of the court a testator would naturally make under those circumstances; and it is embodied in a general rule, laid down as being applicable and operative, if the will does not indicate a different intent.
It is the most natural presumption that a testator would desire the fund or estate to go, on the termination of a life estate by some cause other than the life tenant's death, in exactly the same way as if the termination had been caused by the life tenant's death. Hence such has been laid down as the rule where there is no different intent or desire on the part of testator evident from the will. Beideman v. Sparks, supra; Anthony v.Camden Safe, c., Co., supra.
In the Beideman Case the termination of the life estate was by renunciation in limine; in the Anthony Case, it was, — as here, — by surrender after acceptance. The appellate court has not, as yet, stated that the same rule applies in the latter event as in the former; but it is evident that on principle *Page 202 
the rule must be the same, — and in any event the prior determination of this court in the Anthony Case controls the determination on that point in the instant case.
Likewise the appellate court has not, as yet, stated that the same principles apply in cases where there are contingent substitutionary remaindermen as where there are not, — in theBeideman Case there were no substitutionary remaindermen (nor in the Anthony Case); in the Schmieder Case, supra, there were, but the appellate court made no express statement one way or the other on this point. In logic and reason, however, the same principles must apply. Moreover the prior determination of this court in Fisch v. Fisch, 105 N.J. Eq. 746,155 Atl. Rep. 146, controls the determination on this point in the instant case.
Examination of the will leads to the conclusion that there is no indication therein of any intent which should result in a determination that such general rule should not be applied in the instant case. It shows that the testator was primarily concerned with benefactions to his wife and his two sons; and that he was not concerned with any particular persons or class of persons (other than that they be lineal descendants) as beneficiaries subsequent to or in lieu and stead of his wife and sons. At the time the will was drafted some of the children of the sons were not yet born; none was over a year or two old. The testator expressly provided that the fund should go to his two sons at the termination of the wife's life estate by her death (provided they had then both attained age 50). There is every reason to believe that he would wish it to go likewise on the termination of the widow's life estate prior to her death (provided the sons had attained age 50 — as they have), and that he would have no desire to keep open for the sons' children the opportunity of taking thecorpus in the contingency that the widow should survive the sons, — notwithstanding that he might well prefer to prevent, if he could, the surrender of the life estate by the wife.
The provision as to distribution after the wife's death was obviously not for the purpose of determining beneficiaries at the time of such death, because as to the main trust he provided *Page 203 
that the distribution should not occur until the sons attained age 50, and he obviously contemplated that that would occur after the wife's death; and as to one of the other trusts, he provided that the wife's life estate should terminate on her remarriage.
It has also been suggested that the will evidences the idea of a "spendthrift trust" and thereby indicates an intent that the sons should not take the remainder until the actual death of the wife. But it is clear from the terms of the will, that so far as any such idea was concerned, the testator was quite content that the sons should receive the corpus at age 50.
One thing more: — The clause in the will which provides for the contingent substitution of the lineal descendants of the sons in the place of the sons, specifies the contingency for such substitution not as the predeceasing of the widow by the sons, but as the predeceasing by the sons of "any period of distribution of principal provided for in this my will." This tends to contra-indicate the idea of an intent by testator that the sons should not receive the principal before the actual death of the wife.
The rule herein adopted, and the application thereof, are further supported by the American Law Institute's Restatement ofthe Law of Property, — vol. II, § 231, pp. 966-971, andAppendix III, pp. 60-61, and cases cited.
Mention should perhaps also be made of two other contentions put forward by the guardian ad litem of the infant defendant.
One of these contentions is that the determination that the remainder was not distributable until the wife's death, made in the prior case between same parties, — Bennett v. FidelityUnion Trust Co., 192 Atl. Rep. 230; aff'd, 121 N.J. Eq. 612,192 Atl. Rep. 232, — is res adjudicata in the instant case. Clearly this is not so. That was an adjudication with respect to the factual situation at that time; it cannot be res adjudicata
with respect to the entirely different factual situation before the court in the present case.
The other contention is that there is a controlling equity in the present case opposed to the application of the doctrine *Page 204 
of acceleration, (Cf. p. 42 of the Anthony Case, supra), — to wit, an equity for the protection of the aged widow against the results of an improvident act. Aside from the fact that no such contention is made by her or on her behalf, the proofs establish (as already stated) that the widow has had actual independent advice and fully comprehends what she has done, and moreover that the complainants have agreed to pay her $3,000 a year during her life (which is a greater sum than she receives from the trust), and to give adequate security for such annuity; so that there seems no adequate support for the argument that her act is improvident.
It is concluded that the widow's life estate has been terminated by her release and surrender thereof; and that the sons are entitled to immediate distribution of the corpus to themselves.
The agreement of November 5th, 1937, between complainants and the widow provides that complainants will deposit security to the extent of $25,000 for the payment of the annuity of $3,000. At the hearing, it was agreed that this should be increased to $30,000 and the defendant trustee has agreed to become the depositary for this security. The final decree will provide that this be done prior to the distribution. It may be that complainants would prefer to obtain a life annuity contract from an insurance company; if so, such course would of course meet with equal approval by this court.
The form of decree may be settled on notice. *Page 205