Rudolph A. Breidenbach, on September 8th, 1931, died a resident of Essex county, New Jersey. He left a last will and testament, probated October 17th, 1931, before the surrogate *Page 559 
of Essex county; he named Harry I. Breidenbach, Walter A. Breidenbach and Elsie H. Hub, his children, the defendants herein, as executors and they qualified as such. He bequeathed the sum of $2,000 to his granddaughter, and the remainder of his estate he left to his aforesaid three children in trust. The complainant is the widow of the decedent, and the mother of the above named three children.
The will directed the payment of debts after which the residue of the estate was to be held by the children in trust to invest, and keep the same invested, and to pay the income thereof to the complainant widow, in monthly installments, during her lifetime; and upon her death, the estate was to be evenly divided among the three defendant children, if living, otherwise to their issue. The executors and trustees, under the will, were given full power to sell the real or personal estate. The personal property, all located in this state, was valued at $8,254.44. The decedent died seized of real estate consisting of a twenty-family apartment house, a gasoline station and a group of stores and other buildings located in New York City, State of New York.
The three children and the complainant widow on April 25th, 1932, entered into a written agreement whereby the real estate was conveyed to a New York corporation organized by the children, known as the Cambrelling Realty Co. One hundred and eighty shares of the capital stock thereof were issued and equally divided among the three children — each receiving sixty shares. The agreement recited, in effect, the decedent's death, the provisions of his will in favor of the complainant and his ownership of New York real estate; that the parties felt it to be to their mutual advantage to have title to the real estate held in a corporate name and proposed to convey the real estate to Cambrelling Realty Co., Inc., a New York stock corporation, which they had organized, in exchange for 180 shares of its stock, the entire authorized issue; that the shares, when issued, were to be transferred to Alfred J. Grosso, to be held by him as trustee, in order to carry out the provisions of the last will and testament of the decedent and to provide for the payment to the complainant of the income from the real estate; that the defendants agreed, *Page 560 
as executors, to transfer the real estate to the New York corporation and the complainant agreed to "join in said conveyance for the purpose of relinquishing any interest which she has in the said real estate by virtue of said will;" that the stock was to be issued to the defendants and they agreed in turn to deliver their shares to Alfred J. Grosso, to be held by him in trust, so long as the complainant lived, any dividents which he received to be paid by him to the complainant, the shares themselves to be retained for the defendants, their heirs and assigns, and to be voted in favor of such directors as the defendants selected and against any by-laws which might have the effect of giving any one of the defendants, as stockholder, an advantage over another defendant, as stockholder; that the officers of the corporation "may, from time to time, pay to the said Emma V. Breidenbach, the rents which they receive from the real estate belonging to the company direct, without paying the same first to the trustee, and on failure of the officers of the said corporation to pay the said rents, less the carrying charges of the said property, to the said Emma V. Breidenbach, the trustee may collect the same and pay the amount thereof to said Emma V. Breidenbach; it being expressly understood and agreed that nothing herein or by the certificate of incorporation of the said Cambrelling Realty Co., Inc., or any proceeding taken thereunder shall in anywise affect or prevent the said Emma V. Breidenbach from receiving the net income of the real estate so conveyed by the executors of the said Rudolph A. Breidenbach to the said Cambrelling Realty Co., Inc."
Complainant alleges that she has not received the net income from the estate, and that she has demanded an accounting, but none has been given. She charges that all the rents collected from the realty were not credited to the corporation. She says that counsel fees and administration expenses of the estate were taken out of income as was the legacy of $2,000 paid to her granddaughter; and that a judgment obtained against the estate was paid out of income instead of corpus; and that permanent improvements were made and assessments levied against the estate, the expenses of which were paid out of income, which properly should *Page 561 
have been apportioned between her as life tenant and the trustees as remaindermen.
The bill prays that the defendants be restrained from altering the status of, or removing or transferring the stock of the realty company. It seeks a discovery of all the income, rents,c., of the estate, and for a full and complete accounting. It also asks for the removal of the executors and trustees, and prays that a receiver be appointed to take over the management of the real estate during the lifetime of the complainant.
Two of the defendants, Harry I. Breidenbach and Walter A. Breidenbach, filed no answer, and a decree pro confesso was entered against them. Elsie H. Hub is the only one of the executors and trustees who filed an answer. However, she did not appear to testify at the hearing; but she answered part of the interrogatories, which were received in evidence. At the outset of the hearing, Mr. Grosso moved to dismiss the bill; as his reasons therefor, he, among other things, argued that this court lacked jurisdiction; and that the proper forum for consideration of this matter is the Orphans Court. When his attention was directed to the fact that he failed to give notice to counsel herein of his motion to strike, he took the position that the jurisdiction of the court could, without previous notice to counsel, be questioned at any stage of the proceedings.
However, the Chancery rules, and precedents, do not appear to sustain his stand. The rules provide that objection to pleadings must be made by five days' notice of motion, which must state the particular grounds of objection. (Chancery rules 77 and 168.) The Court of Errors and Appeals in Speakman v. InternationalPulverizing Corp., 122 N.J. Eq. 568; 195 Atl. Rep. 627, said:
"Furthermore, we do not entertain the view that a motion to strike out — the equivalent of a demurrer — can be made after answer filed, or rather that the denial of the motion under such circumstances would not be entirely a matter for the Court of Chancery."
Vice-Chancellor Stevenson in considering the same question in the case of Demarest v. Terhune, 62 N.J. Eq. 663;50 Atl. Rep. 664, said: *Page 562 
"The object of the rule is to give reasonable notice to the complainant of the grounds upon which the sufficiency of his bill is to be called in question, to the end that he may prepare to meet the attack which is made and that he may not waste his time in preparing to meet attacks which are not made. * * * It was not the intention of the rule to compel the demurrant to submit to his adversary his brief or any particulars of his argument. The purpose was to notify the complainant only of the general subject-matter of the argument."
Krueger v. Armitage, 58 N.J. Eq. 357; 44 Atl. Rep. 167;Eggers v. Anderson, 63 N.J. Eq. 264; 49 Atl. Rep. 578; Baird
v. Board of Recreation Commissioners, c., 108 N.J. Eq. 91;154 Atl. Rep. 204. I conclude that the defendants' motion to strike the bill should be denied.
The agreement between the complainant widow and the children was prepared for them by the defendant Alfred J. Grosso; he appeared in the case as counsel for the defendants. He did not testify at the hearing.
The defendants contend that the agreement accelerated and terminated the complainant's life estate. I am not in accord with their view of the situation. I believe all the circumstances warrant a contrary conclusion.
The fourth paragraph of the preamble of the agreement says: "Whereas, in order to carry out the provisions of the Last Will and Testament of the said Rudolph A. Breidenbach and to provide for the payment to the party of the second part of the income from said real estate, the said shares, when issued, are to be transferred to the trustee, upon the trusts hereinafter mentioned." That quotation plainly infers that the realty company was organized for the purpose of carrying out the provisions of decedent's will. A perusal of paragraph one of the agreement indicates that it was entered into by the decedent's three children in their capacity as trustees. It reads: "The parties of the first part as executors of the estate of Rudolph A. Breidenbach, agree to convey to the Cambrelling Realty Co., Inc., the real estate at Cambrelling and Pelham Avenues in the City of New York aforesaid, in exchange for the one hundred eighty (180) shares of capital *Page 563 
stock aforementioned; said shares to be issued to them in the proportion of sixty (60) shares each."
In the operation and management of the real estate, the three defendant children, by their acts lend support to the fact that they were acting as executors and trustees of the decedent's estate. They made payments to the widow monthly as provided by the will — although no specified time for payments is recited in the agreement. Debts of decedent, and a legacy, were paid out of the income of the real estate: (a) payment to Harry I. Breidenbach and Walter A. Breidenbach, repayment on R.A.B. (Rudolph A. Breidenbach) agreement, $1,082.22 (R. p. 52); (b) payment to the Orange Valley Bank, January 15th, 1934, from the account of Cambrelling Realty Co., $578.54, "To be applied on account of past due notes of H.W. Smith discounted for Breidenbach Sons, Inc., and endorsed by R.A. Breidenbach." (R. pp. 51 and 52); (c) judgment of Caroline Wagner against the estate of Rudolph A. Breidenbach, deceased, checks payable to Alfred J. Grosso, September, 1932, to April, 1937, in the amount of $4,416.62 (R. pp. 52 and 53). Their conduct in the management of the real estate under the agreement, points strongly to the inference that the conveyance to the corporation was only a formal transfer of the bare legal title involving no change of the trust relations between the parties. There is no doubt in my mind that the will gave rise to and was the basis of the agreement. The agreement harbors within its confines the thoughts and the intentions of the decedent to some extent.
While the complainant was entitled to the total net income of the estate under the provisions of the will and the terms of the agreement, the evidence is to the effect that she has not received it.
The substance of the defendants' argument is (a) that the aforesaid agreement caused an immediate distribution of the real estate; (b) that the trust under the will did not survive the execution of the agreement. They lean heavily on the case ofBennett v. Fidelity Union Trust Co., 123 N.J. Eq. 198;196 Atl. Rep. 375. In Bennett v. Fidelity Union Trust Co.,122 N.J. Eq. 455; 194 Atl. Rep. 449, the court decided *Page 564 
that the instrument in that case did not terminate the life estate; while in the Bennett Case, reported in 123 N.J. Eq. 198,
the court concluded the instrument there did terminate the life estate. Both cases are authority for the principle that a termination of a testamentary life estate during the beneficiary's life, may occur if the will either expressly or by implication from its terms, permitted distribution of the estate prior to the death of the life tenant. In the Bennett Case, reported in 123 N.J. Eq. 198, there was a release which ran to the trustee and exonerated it from making any further payments to the life tenant on account of the testamentary trust, the court holding that the release was validly executed, and upon legal, valuable and adequate consideration, and with full interest and comprehension on the part of the releasor after the benefit of independent advice.
In the instant case, the situation is entirely different; there was no executed complete, unequivocal and final release. In theBennett Case, last cited, the court held there was an acceleration and merger and the release ran to the trustee. In the instant case, the defendant contends that the release from the complainant is to be found in paragraph two of the agreement, which reads: "The party of the second part [complainant herein] agrees to join in the said conveyance [to the Cambrelling Realty Co.] for the purpose of relinquishing any interest which she has in the real estate by virtue of said will." I am not satisfied that this quoted language amounts to a release as comprehended in the Bennett Case. While the release in the last cited BennettCase was complete, unequivocal and final, and ran from the life tenant to the trustee, the same situation does not exist here. The words which the defendants here argue amount to a release, certainly are not complete, unequivocal and final; and, furthermore, they do not run to the trustees. An examination of paragraph four of the agreement adds force to this belief. In that paragraph are to be found these words: "it being expressly understood and agreed that nothing herein or by the certificate of incorporation of the said Cambrelling Realty Co., Inc., or any proceeding taken thereunder shall in anywise affect or prevent the said Emma V. Breidenbach from receiving *Page 565 
the net income of the real estate so conveyed by the executors of the said Rudolph A. Breidenbach to the said Cambrelling Realty Co., Inc." These quoted words, in my opinion, do not convey the inference of a termination or a merger.
I am convinced that the agreement, as a whole, effected no termination of the life estate, nor a termination of the fiduciary obligations of the testamentary trustees, nor an acceleration of the distribution of the estate. Ash v. Ash,126 N.J. Eq. 531; 10 Atl. Rep. 2d 150. I believe that under all the circumstances, the complainant is entitled to a decree for an accounting.