Docket 139/444

ERNEST SIMPKINS et al., complainants,

*v.*

LIZZIE SIMPKINS et al., defendants.

[Decided March 2d, 1942.]

*Messrs. Homan, Buchanan & Smith,* for the complainants.

*Mr. Frank H. Lawton,* for the infant defendants.

JAYNE, V. C.

The complainants in this cause seek, as the remaindermen, to effectuate an immediate distribution to them of the *corpus*

of a testamentary trust in consequence of the termination of the precedent life estate therein. They invoke the so-called doctrine of acceleration.

The pertinent factual circumstances may be related succinctly. Louis Simpkins during his life sold ,and conveyed to his two sons, Ernest and Robert, a relatively large farm together with the live stock and farming implements, and in partial payment of the purchase price his sons executed and delivered to him two mortgages each in the principal sum of $10,000, appropriately encumbering the real and personal property. Louis Simpkins died, testate, on November 30th, 1935. His two sons and his widow, Lizzie Simpkins, among others of his family, survive. The testamentary disposition of the two mortgages is exhibited by the third paragraph of the testator's will, which in part reads as follows:

"*Third:* (a) I hereby give, devise and bequeath to my two sons, Ernest Simpkins and Robert Simpkins, one-quarter interest each in and to the mortgages which I hold on their real and personal property, said mortgages being a real estate mortgage in the sum of Ten Thousand Dollars ($10,000.00) and a chattel mortgage in the sum of Ten Thousand Dollars ($10,000.00), and the remaining one-half of said mortgages to my Executor hereinafter named, in. trust nevertheless, the income therefrom to be paid to my wife so long as she shall live and remain unmarried; if my said wife remarry, then I give and bequeath to my said two sons an additional one-eighth share each in and to said mortgages and direct my said Executors to pay the income from the remaining quarter to my said wife during her life. Upon the death of my said wife, I give and bequeath the remainder of said mortgages to my two sons absolutely. In any event, I forgive my two sons for any unpaid interest which may have accrued at the time of my death and direct that same need not be paid.

"(b) If the above method of distribution be declared invalid for any reason, then I hereby give and bequeath said mortgages to my said Executor, in trust nevertheless, one-quarter of the income therefrom to be paid to each of my said two sons and the remaining one-half of said income to be paid to my wife so long as she shall live and remain unmarried; if my said wife remarry, then I direct my said Executor to pay an additional one-eighth share of said income to each of my said two sons and the remaining quarter of said income to my said wife during her life. Upon the death of my said wife, I give and bequeath said mortgages to my two sons absolutely and direct my said Executor to assign and transfer same over unto my said two sons. In any event, I forgive my two sons for any unpaid interest which may have accrued at the time of my death and direct that same need not be paid."

Pursuant to the intent of the testator, Robert Simpkins qualified as executor and trustee and he elected to administer the trust in accordance with the terms expressed in subdivision (b) of the third paragraph of the will.

On January 5th, 1942, the widow, Lizzie Simpkins, executed and delivered to the trustee an instrument in writing by which she advisedly and for a valid consideration renounced and relinquished, immediately and unconditionally, all her right, title and interest and estate in this particular trust and forever exonerated and discharged the trustee of all claims and demands whatsoever in law or in equity in respect thereof.

In subdivision (c) of the same paragraph of his will, the testator declared:

"(c) In the event that either of my said sons die before becoming entitled to the above named legacy, without leaving child, children or descendants, then I give, devise and bequeath that son's share to the survivor; and if either, or both of my said sons shall so die leaving child, children or descendants, then I hereby direct that the said child, children or descendants shall be entitled to the share to which his, her or their parent or parents would be entitled if living."

The complainant Robert Simpkins now has two minor children, one of whom was born since the death of the testator. Ernest Simpkins has no children. The interests of all the contingent substitutionary remaindermen are represented by a guardian *ad litem*.

The complainants now assert that by reason of the absolute extinguishment of the precedent life estate, an immediate distribution in conformity with the terms of the testator's will should be made of the principal to them as owners of the vested estate in remainder.

The guardian *ad litem* denies that the release operates to accelerate the date of distribution of the principal of the trust as alleged in the bill and avers that the gift to the sons constitutes a contingent remainder and that it was the apparent intention of the testator that distribution of the remainder was not to occur until the death of Lizzie Simpkins, at which time the *corpus* is to be divided among such of the testator's children as shall then be living and the issue of such of them as may be then deceased, in equal shares.

To permit acceleration the precedent estate must, of course, be destroyed. The release executed and presented by Mrs. Simpkins to the trustee terminated her beneficial life interest in the trust. *Anthony* v. *Camden Safe, &c., Co., 106 N. J. Eq. 41; 149 Atl. Rep. 822; Bennett* v. *Fidelity Union Trust Co., 123 N. J. Eq. 198; 196 Atl. Rep. 375.* The release here in evidence is apparently in form and substance identical with the releases of similar import considered in the cases last cited, and the determination in those cases must be accepted as authoritative on this point.

Moreover, Mrs. Simpkins testified that the terms of the release were intelligibly explained to her by her attorney, and that she executed the document for a valid consideration with full comprehension of its effect. It is not apparent that the release was an improvident act. The instrument is essentially a release evincing a transaction between the life beneficiary and the trustee. It does not purport to assign the life interest to the remaindermen. *Cf. In re Nilsson, 112 N. J. Eq. 445; 164 Atl. Rep. 578; Schmieder* v. *Meyer, 97 N. J. Eq. 335* (at *p. 338*); *127 Atl. Rep. 162; Bennett* v. *Fidelity Union Trust Co., 122 N. J. Eq. 455* (at *p. 458*); *194 Atl. Rep. 449; Bennett* v. *Fidelity Union Trust Co., 123 N. J. Eq. 198* (at *p. 200*); *196 Atl. Rep. 375; Anthony* v. *Camden Safe, &c., Co., supra* (at *p. 43*); *Fisch* v. *Fisch, 105 N. J. Eq. 746* (at *p. 748*); *155 Atl. Rep. 146.*

It is to be acknowledged that where there is a testamentary gift of a life estate and a gift of the remainder after the termination of the life estate, the gift in remainder will be deemed vested immediately in the absence of some controlling equity or some evidence in the will from which a different intent is implied. *Schmieder* v. *Meyer, supra* (at *p. 338*); *Bennett* v. *Fidelity Union Trust Co., 122 N. J. Eq. 455* (at *pp. 458, 459*); *194 Atl. Rep. 449; Fisch* v. *Fisch, supra; Pedrajas* v. *Bloomfield Trust Co., 101 N. J. Eq. 105; 137 Atl. Rep. 86; affirmed, 101 N. J. Eq. 803; 139 Atl. Rep. 18; Cf. Shelley's Case, 1 Coke 93b; Fuller* v. *Fuller, Cro. Eliz. 423; Beideman* v. *Sparks, 61 N. J. Eq. 226; 47 Atl. Rep. 811; affirmed, 64 N. J. Eq. 374; 55 Atl. Rep. 1132; Redmond* v. *Gummere, 94 N. J. Eq. 216; 119 Atl. Rep. 631;*

see *Clapp, Wills and Administration in New Jersey* §§ *180 et seq.*

The contention that subdivision (c) (paragraph third) of the will projects the inference that the testator thereby intended to erect a condition precedent to postpone the vesting of the remainder in his two sons, is not persuasive. More reasonably can it be inferred that the testator sought merely to impose a condition subsequent, so denoted, upon the instant vested right, whereby, in the event of the death of either or both of his sons before "becoming entitled" to distribution, the share theretofore vested in the son should become divested and thereupon vest in the designated substitutionary remainderman or remaindermen. *Bennett* v. *Fidelity Union Trust Co., 123 N. J. Eq. 198; 196 Atl. Rep. 375.*

The policy of the law requires that legacies in all cases should be deemed to be vested rather than contingent (unless such a construction is clearly discordant with the intention of the testator). *Fisch* v. *Fisch, supra; In re Buzby, 94 N. J. Eq. 151; 118 Atl. Rep. 835; VanDyke's Adm'r* v. *Vanderpool's Adm'r, 14 N. J. Eq. 198; Neilson* v. *Bishop, 45 N. J. Eq. 473; 17 Atl. Rep. 962; Clark* v. *Morehous, 74 N. J. Eq. 658; 70 Atl. Rep. 307.*

This rule of construction is always observed where it is apparent from the terms of the will that a future gift is postponed merely to let in some other interest, such as a life estate. The future gift is vested, although the enjoyment is postponed. *Post* v. *Herbert's Executors, 27 N. J. Eq. 540; Howell* v. *Gifford, 64 N. J. Eq. 180; 53 Atl. Rep. 1074; Potter* v. *Nixon, 81 N. J. Eq. 338; 86 Atl. Rep. 444; Trenton Trust, &c., Co.* v. *Moore, 83 N. J. Eq. 584; 91 Atl. Rep. 908; affirmed, 84 N. J. Eq. 194; 93 Atl. Rep. 1087; Howell, Ex'r,* v. *Green, Adm'r, 31 N. J. Law 570; Kinkead* v. *Ryan, 64 N. J. Eq. 454; 53 Atl. Rep. 1053; Clement* v. *Creveling, 83 N. J. Eq. 318; 91 Atl. Rep. 89; In re Buzby, supra; Wells* v. *Bennett, 100 N. J. Eq. 358; 135 Atl. Rep. 146; Fisch* v. *Fisch, supra; Pedrajas* v. *Bloomfield Trust Co., supra; Shelley's Case, supra; Fuller* v. *Fuller, supra; Redmond* v. *Gummere, supra; Pedrick* v. *Guarantee Trust Co., 123 N. J. Eq. 395; 197 Atl. Rep. 909.*

True, this rule is not applicable where it is evident that the testator intended that the gift of the remainder should not vest until the death of the life tenant. *Teets* v. *Weise, 47 N. J. Law 154; Van Tilburgh* v. *Hollinshead, 14 N. J. Eq. 32; Den* v. *Sayre, 3 N. J. Law 183; Tanlum* v. *Campbell, 83 N. J. Eq. 361; 91 Atl. Rep. 120; Wunderlich* v. *Bleyle, 96 N. J. Eq. 135; 125 Atl. Rep. 386; Sadler* v. *Bergstrom, 113 N. J. Eq. 567; 168 Atl. Rep. 50; Mitchell* v. *Dodd, 114 Atl. Rep. 801; Stout* v. *Cook, 79 N. J. Eq. 573; 81 Atl. Rep. 821; Lorillard* v. *Kent, 99 N. J. Eq. 509; 133 Atl. Rep. 381; Post* v. *Herbert's Ex'rs, supra; Meeker* v. *Meeker, 61 N. J. Law 146; 38 Atl. Rep. 749;* see, also, *Clapp, supra,* § *51,* on the rule of intention.

A vigilant examination of the will fails to supply any indication that the testator desired to defer the distribution of the principal of this trust until the actual death of his widow. Where a testator provides that the survivors of a class upon the death of the first taker shall take, it does not imply that he has any particular desire that the survivors at any specified time should be the only beneficiaries. The first taker might die immediately after the testator and all of the class would take. Shorn of its legal aspect, the evident purpose of the testator in the present case was to benefit his wife and ultimately liberate his two sons from their mortgage obligations. The two sons are the mortgagors. Assuredly the testator was not concerned with any particular persons or class of persons (except issue or descendants of his sons) as beneficiaries subsequent to, or in lieu and stead of, his wife and sons. The widow has now relinquished her beneficial life interest. In the absence of a reason to provide for his wife, the testator by his will undoubtedly would have exonerated the two sons from their obligation to pay the mortgages, in addition to relieving them, as he did, of the payment of the accrued interest. Such would probably be his desire in the existing circumstances.

Vice-Chancellor Buchanan remarked in *Bennett* v. *Fidelity Union Trust Co., supra:*

"It is the most natural presumption that a testator would desire the fund or estate to go, on the termination of a life

estate by some cause other than the life tenant's death, in exactly the same way as if the termination had been caused by the life tenant's death. Hence such has been laid down as the rule where there is no different intent or desire on the part of the testator evident from the will."

It is therefore resolved that the life estate has been effectively terminated and that in accord with the evident intent of the testator, the complainants, as the vested remaindermen, have now become entitled to their interest in the trust estate.

A decree will be advised in accordance with the prayer of the bill.